HUDSON v. CHARLESTON, C. & C. R. CO.

(Circuit Court, W. D. North Carolina. March 4, 1893.)

1. MASTER AND SERVANT—NEGLIGENCE—DEFECTIVE APPLIANCES.
In an action by a railroad employe for injuries resulting from his being run over by defendant's engine, plaintiff is entitled to recover where it is shown that the valves of the engine were leaky, and allowed steam to accumulate in the cylinder and move the engine in spite of those in charge of it, which defect was known, or should have been known, to defendant.

2. SAME—FELLOW SERVANT.
But if such movement was caused by the fireman in charge of the engine not defective there can be no recovery, for he was the fellow servant of plaintiff, in any view of the evidence, which was conflicting as to whether plaintiff was a baggage man, car coupler, or switch tender.

3. SAME—VICE PRINCIPAL.
Where the conductor of the train that caused the accident had ordered plaintiff to open a switch, and cut off a flat car from the train and place it on a side track, he had a right to presume that his orders had been obeyed, and that plaintiff was in a position to uncouple the cars safely; and hence his subsequent order to the engineer to "ease up on the pin" by a forward motion of the engine, so that the car might be uncoupled, was not negligence, though such forward motion was what injured plaintiff.

4. SAME—CONTRIBUTORY NEGLIGENCE.
When plaintiff had long been accustomed, in the course of his employment, to couple and uncouple cars and tend switches without objection from his superior officers, it was not contributory negligence for him to undertake to uncouple the cars on this occasion, exchanging duties with his mate, who had been ordered by the conductor to uncouple the cars.

5. SAME.
Should the evidence show that plaintiff himself gave the signal that brought the train upon him, he was guilty of contributory negligence, and could not recover.

At Law. Action by H. T. Hudson against the Charleston, Cincinnati & Chicago Railroad Company for personal injuries. As to the nature and extent of plaintiff's employment the evidence was in conflict. Some evidence tended to show that he acted as baggage master, car coupler, switch tender, etc. The evidence was also in conflict as to whether the forward motion of the engine which injured plaintiff was due to the accumulation of the steam in its cylinder by reason of leaky valves, or whether it was made by those in charge of the engine, voluntarily, or in response to signals from the conductor or from plaintiff himself.

F. I. Osborne and Jones & Tillett, for plaintiff.

P. D. Walker and G. F. Bason, for defendant.

DICK, District Judge, (charging jury.) The cause of action in this case originated in the state of South Carolina. As the action is of a transitory character, it was rightfully brought by the plaintiff in a court of this state in the county of his residence. Under the provisions of the act of congress of March 3, 1887, corrected by the act of August 13, 1888, the defendant filed a petition to have the cause removed to this court on the ground of "local prejudice." This court, being of opinion that the sufficient allegations of the petition were sustained by the proofs offered, ordered a removal as prayed for.

I can well conceive that an individual nonresident defendant may have some grounds to apprehend the existence of local prejudices against him, in an action brought in a state court in a county where a plaintiff resides, who has, by reason of family, social, and business relations and connections, acquired considerable influence, but I know of no just or reasonable general cause for local prejudices against a railroad corporation doing business in the county where a suit is brought. Railroad corporations are in many respects public institutions, and confer almost inestimable benefits upon all sections of the country. They have their tracks and station houses in nearly every county and state in the nation. They are beneficent and powerful agents in the progress of civilization, advancing state and national power, prosperity, and greatness, and materially contributing to individual comfort, convenience, enjoyment, improvement, and wealth in all the departments of domestic, social, and business life. That such prejudices do exist is clearly manifested by the numerous cases in which such corporations have filed petitions in federal courts, making such allegations, for the purpose of obtaining judicial orders of removal from state courts.

I can easily understand how local prejudices may have concentration and power in the narrow limits of a county where local causes exist, and where jurors are neighbors, and frequently meet in social and business intercourse, but I am surprised that such prejudices seem to prevail in all communities. These railroad companies are not apprehensive that the judges in the state courts will do them wrong and injustice in the administration of the law, but they fear the action of local jurors, who are more accessible to the passions and prejudices excited and applied by immediate surround-

ing influences. These companies, therefore, anxiously desire their causes to be tried before jurors in the federal courts, who are summoned from a larger extent of territory, and who are usually the most intelligent and upright citizens and business men in their communities. Under these circumstances I feel that an imperative official obligation rests upon me to instruct you that it is your sworn, solemn, and legal duty to guard yourselves against any influences other than those legitimately produced by the testimony in this case, and to divest your minds of all kinds of prejudices, if any such are entertained by you. The defendant company is entitled in this court to the same rights as the plaintiff; no more and no less. It would be entitled to such equal rights in any court of justice. I am aware that sympathy for human injury and suffering is a natural sentiment, and usually commendable, but it should not improperly influence the action of a jury in the discharge of a solemn legal duty. You must patiently hear and consider the testimony, you must deliberately weigh its force and effect, and then determine the preponderance with the same impartiality that you would do if the controversy was between two of your fellow citizens.

I have the legal right to express to you my views of the evidence, but on this trial I will observe the laws of this state, and leave you to consider and determine all the matters of fact involved in the issues submitted to you for trial. On you alone rests the responsibility of determining the facts, and, if the facts found by you justify, you can assess just compensatory damages for the injuries sustained by the plaintiff; but I deem it proper to advise you that the court can set aside your verdict, and grant a new trial, if the damages are unreasonably excessive.

I will now proceed to perform my special duty in announcing the principles of law which I think are applicable to the issues of fact before you for trial. As I desire to be fully and clearly understood by you, and to have my views of the law expressed with certainty and accuracy, so that they may be reviewed and reversed in an appellate court, if erroneous, I have deemed it proper to reduce to writing and to read to you my instructions on this subject. Some of the issues submitted have been withdrawn, or the answers to be returned are agreed upon by counsel.

First and second issues. Before you can answer "Yes" to the first and second issues you must become satisfied by a preponderance of the evidence that the engine of the defendant that caused the injury complained of was seriously defective, and such defect was the active and moving cause of the injury; that is, that such defect produced the self movement by reason of force accumulated by the leakage of steam through the defective valves, or put it out of the power of the fireman in charge to control the engine to prevent the injury to the plaintiff. If the engine was in good order, and the injury was caused by the act of the fireman, who had charge of the engine, then the plaintiff cannot recover, as the injury resulted from the act of a fellow servant; but if you find that the defective engine was the active and proximate cause of the injury, and that the defendant had opportunity, through its superintending officers,

to obtain knowledge of such defect, then the plaintiff is entitled to recover such damages as you, from the evidence, see proper to assess.

Fourth issue.    Before you can properly consider the question as to the negligence of the conductor of defendant's train of cars, you must be satisfied from the evidence that the manager of the engine saw and obeyed the signal of the conductor for the forward movement of the engine, to "ease up" on the pin that coupled the flat car of brick with the train.  If you become satisfied from the evidence that the manager of the engine saw and obeyed said signal, then I charge you that there was no negligence on the part of the conductor in giving the signal,—if you believe his testimony, —for he had given his instructions to his subordinates, the plaintiff and Ramseur, to open the switch, and cut off the flat car of brick and place same on side track.  The conductor in supervising his train saw that a forward movement of the engine was necessary to ease up on the pin, and he had a right to presume that his subordinates had obeyed his orders, and were in position to safely and properly uncouple the cars as directed.

Seventh issue.   If you become satisfied from a preponderance of the evidence that the plaintiff was required, by the terms of his contract of employment, by the defendant, to couple and uncouple cars when necessary, or when ordered to do so by the conductor; that the plaintiff and witness Ramseur had often worked as fellow servants in the same general line of employment in opening switches and coupling and uncoupling cars, and no dissatisfaction had been expressed by superior officers,—then I charge you that the mere fact that plaintiff exchanged employment with Ramseur, and undertook to uncouple the car on this occasion when the injury was sustained, he was not guilty of contributory negligence, even though he disobeyed the express order of the conductor.  He certainly was not guilty of contributory negligence if he was, according to his testimony, in the line of his duty, and was obeying the command of the conductor.

As to the manner and methods of coupling and uncoupling cars, the evidence tends to show that there is no certain and fixed manner and method of doing such work, but that persons discharging such imposed duties are usually governed by the circumstances of the occasion, and the place where the cars are stopped.  Long experience has shown that attempts to get on a moving train, or to couple and uncouple such moving train, are very dangerous, and any person injured in such hazardous attempt negligently contributes to his own injury.  It is well known that the management of moving railroad trains is hazardous, and all persons who engage in such employment assume the ordinary incidental risks arising from accident and the unskillful acts of their fellow servants.

Eighth issue.   You assess the damages.   The judge has nothing to do with this issue, except to see that excessive damages are not assessed.

In reply to an instruction requested by counsel of plaintiff at close of charge.    If you believe the testimony of the witness Wright that

plaintiff gave the signal that brought the car upon him, then I charge you that plaintiff was guilty of contributory negligence, and cannot recover.

At the close of the charge the court asked counsel if they desired any further instructions or any modification of instructions given. Counsel of defendant replied that they had handed to the court, at the close of the evidence, written instructions which they wished to be given, and urged the same in their arguments, and had no other instructions to request. The jury then retired, and, after several hours deliberation, returned a verdict for $4,333.33⅓. The court supposed that the jury had rendered a compromise verdict, and on inquiry ascertained such to be the fact. The court then remarked to counsel of plaintiff that, unless they agreed to a verdict assessing damages at $1,500, the verdict would be set aside, and a new trial granted. Upon the consent of counsel of plaintiff the jury returned a verdict for the damages indicated by the court.