### BRADLEY v. OHIO R. & C. RY. CO.

#### (Circuit Court, W. D. North Carolina. December 17, 1896.)

REMOVAL OF CAUSES — CITIZENSHIP OF CORPORATIONS — CHARTERS FROM DIFFERENT STATES.

In 1885 the legislature of South Carolina, by an amendatory act, recognized the corporation of the G. Ry. Co., and gave it the name of the C. Ry. Co. In 1886 the C. Ry. Co. consolidated with two North Carolina railroad corporations, under its name of the C. Ry. Co.; and such consolidation was ratified by the North Carolina legislature by an act of February, 1887, which also conferred important franchises, within North Carolina, on the corporation. The C. Ry. Co., as thus organized, also had charters from South Carolina, Tennessee, and Kentucky, and was authorized to build a railroad passing through the four states. A mortgage upon its road was foreclosed, the whole road sold, and bought by one H. After taking possession, H. executed and filed

a declaration, under sections 697, 698, and 2005 of the North Carolina Code, for the purpose of constituting a new corporation to succeed to the rights and property bought by him, to which he gave the name of the O. Ry. Co. of North Carolina, and to which he conveyed the railroad property within that state. H. afterwards obtained charters in Virginia and South Carolina for the O. Ry. Co., and conveyed to it the railroad property and franchises purchased by him. *Held,* that the corporation operating the railroad in North Carolina could not found any claim to be considered a citizen and resident of South Carolina on any relation it had with the C. Ry. Co., nor on the obtaining of charters from South Carolina and Virginia, and conveyance of the property by H., but that it was a domestic corporation of North Carolina, and, as such, not entitled to remove to a federal court, on the ground of local prejudice, a suit brought against it in a court of that state.

A Motion to Remand to the State Court.

E. J. Justice, for plaintiff.

P. J. Sinclair and H. N. Hardin, for defendant.

DICK, District Judge. This action was instituted in the state court for the county of McDowell to recover damages for personal injuries occurring in this state; and the defendant availed itself of the right given by the act of congress of the 13th of August, 1888, to nonresident defendants, to remove an action pending in a state court to the United States circuit court on the grounds of local prejudice, etc. The application was received and considered, and this court adjudged that local prejudice did exist in said county, as alleged and proved by evidence; and an order was made for the removal of this case from the state court to this court at Charlotte. In the said order, leave was granted to plaintiff to file a motion to remand at the next term of this court; and such motion was duly made, and is now before this court for determination. This order was not recognized and observed by the state court, which declined to relinquish jurisdiction, on the grounds insisted upon by the plaintiff: "(1) That the Ohio River & Charleston Railroad Company is a corporation and citizen of North Carolina; (2) that this fact also appears in the record and pleadings." From this order in the state court the defendant prayed an appeal, which was allowed, and the clerk was directed to send up a full transcript of the record, and all the papers filed in the case. On a hearing in the supreme court in the term just closed, the court affirmed the order of the court below, not upon the grounds stated in the order appealed from, although fully presented in the record, briefs, and argument before the court, but upon a defect that appeared in the proceedings of this court for the removal of the cause. 26 S. E. 169. I concur in this decision of the supreme court, founded upon the fact that "it does not affirmatively appear, either in the petition, or in the order of removal, or anywhere else in the record, that the diverse citizenship of the parties existed also at the time of the commencement of the action." This decision is not important, if the substantial grounds set forth in the order of the state court are not well founded; for, as the case was properly retained, and is still pending, in the state court, and this court acquired no jurisdiction, by reason of its defective proceedings, the defect mentioned could be reme-

died by the defendant filing a new petition, alleging the facts omitted by inadvertence, and obtaining a correct and legal order of removal; for common justice would require that the defendant should, not be deprived of a substantial legal right by the nonobservance of his counsel and the court of a matter that is, to some extent, often refined and technical.

The material question of law for this court to decide on the pending motion to remand is whether the defendant is a foreign or domestic corporation, before allowing a new petition to be filed. It is insisted on the part of the plaintiff that defendant is a domestic corporation, for the purposes of this action, because in its answer it did not specifically answer to a positive allegation in the complaint that "it is a corporation incorporated under the laws of North Carolina, owning and operating a railway and doing business in said state as a common carrier of passengers and freight," etc. To this allegation the defendant made answer that it "has not sufficient knowledge or information to deny or admit this allegation of the complaint, and denies the same." This court is of opinion that this general denial by the defendant of the allegation of its legal existence as a domestic corporation is sufficient, and the only matters of fact admitted were due service of process, and that it was an organized association acting as a corporation within this state. The plaintiff, on objection to this general denial of matter of law, as indefinite and uncertain, could not, on motion, have obtained an order on defendant to make the answer more specific as to the legality of its domestic corporate existence, for the allegation contains matter of law. Matters of law, or mere inferences of law, are questions to be judicially noticed and determined by the court, and such matters which are not proper subjects of traverse are not taken as admitted by pleading over. This matter of law was distinctly presented in the order of the state court appealed from, and was the material point in the case; and the fact that the state supreme court, after full argument of counsel, failed to make adjudication of the point, tends strongly to show that the court regarded the question of law as a matter of some difficulty and importance. A railroad corporation is an artificial person, created by positive law, and invested with franchises involving specific powers and privileges, conferring some of the attributes of sovereignty, to be exercised primarily for the benefits and advantages of the public. Such corporate franchises can never arise and be invested by any kind of implication. If the defendant is not a domestic, but a foreign, corporation, its failure in its answer to make specific denial of a direct and positive allegation of matters of law in the complaint did not estop it from claiming a right of removal of this case from the state court to this court under the provisions of the act of congress of the 13th of August, 1888.

The chief ground for the motion to remand—strongly insisted upon by counsel of plaintiff—is that the defendant, at the time of the injury sustained by plaintiff's intestate, was a domestic corporation, duly incorporated under the laws of the state of North Carolina, owning and operating a railway and doing business in said

state as a carrier of passengers and freight, etc., and, being in fact and in law such domestic corporation, it was not entitled, under the said act of congress, to the order of removal heretofore made by this court, which has not now jurisdiction to retain and dispose of this case. I have examined and considered this question of law with more than ordinary care, as the counsel of defendant, in their briefs and arguments, insisted that this court, in the case of Hudson v. Railroad Co., decided "that, for jurisdictional purposes, the C., C. & C. R. R. Co. was a foreign corporation within the state of North Carolina, and was a citizen of South Carolina, and that the act of the general assembly of this state amounted only to a license, and did not create a new corporation." I have examined such case, reported in 55 Fed. 248, and find that the court decided that said railroad company was a citizen of South Carolina, and had a right of removal of the case from the state to the federal court. The question as to its citizenship in this state was not presented on the trial, as the injury sued for in the state court occurred in South Carolina. On a petition of plaintiff to have his judgment declared to be a lien on the property of the defendant under the laws of this state, I referred this question to the circuit court of South Carolina having original and prior jurisdiction of the subject-matter. Ex parte Hudson, 61 Fed. 369. Many motions were made in this court before the trial, and in some of them I may have expressed views as stated by counsel, and, according to my recollection, such were my impressions, but the question was not fully argued and decided. It now appears, from documentary proofs before this court, that the general assembly of South Carolina, by an amendatory act of December 22, 1885, recognized the pre-existing corporation of the Georgetown & North Carolina Narrow-Gauge Railroad Company, and gave it the name of the Charleston, Cincinnati & Chicago Railroad Company. Previous to this date there were existing in the state of North Carolina two duly chartered and organized domestic corporations, respectively known as the Rutherford Railway Construction Company and the Rutherfordton, Marion & Tennessee Railway. These domestic corporations were desirous of consolidating with and merging into the said Charleston, Cincinnati & Chicago Railroad Company so as to make a continuous line, and to extend the said road into and across the state of North Carolina, and to enable said road to be continued across the states of Tennessee, Virginia, and Kentucky to the Ohio river. In September, 1886, terms of consolidation were agreed upon by these respective railroad companies, which were duly approved, ratified, and confirmed by an act of the general assembly of North Carolina of the 17th of February, 1887 (Acts 1887, c. 77). By this act the Charleston, Cincinnati & Chicago Railroad Company was recognized and adopted as one corporation, with its consolidated organization, for the purposes of the general management of its property and conducting its business in the several states through which its railway should be constructed and operated. As it acquired the property and franchises of two domestic railway corporations of this state, and was also, in express terms, authorized and empowered

to have and exercise all the powers, privileges, and franchises to the extent conferred on the North Carolina Railroad Company and other railroads in the chapters of the State Code entitled "Corporations" and "Railroads," it became a domestic corporation, to be governed by the laws of this state as to its property and business situated and transacted therein; and it also became liable to answer for all acts done within such territorial limits as a domestic corporation. Railway Co. v. Meeh, 16 C. C. A. 510, 69 Fed. 753, and cases cited. This act was not a mere enabling act, granting a license to a foreign corporation to operate a railroad and transact other business in this state under chartered powers derived from the state of South Carolina; for this legislative grant conferred other important franchises, which were accepted and exercised in this state, in the construction and operation of its railway, to as full an extent as could have been done by a North Carolina corporation under the most liberal charters ever granted. Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878. This act expressly authorized this consolidated corporation to mortgage its road and property to secure its indebtedness. In order to carry on the contemplated plans and purposes of consolidation and extension of its railroad in and through the several states mentioned, this corporation on the 9th of August, 1887, executed a mortgage in the nature of a deed of trust, whereby it conveyed to the Boston Safe Deposit & Trust Company all of its property and franchises, etc., to secure the payment of certain specified first mortgage bonds, and said mortgage was duly delivered and recorded in the manner required by the laws of the several states through which its railroad extended. This corporation having failed to make payment of interest on its bonds at the time and in the manner provided for in the mortgage, the whole debt secured became due and payable. The mortgagee, after reasonable indulgence, duly instituted proceedings in the United States circuit court in the district of South Carolina to obtain a decree for foreclosure and sale of the property and franchises conveyed as a security for the payment of the bonds mentioned in the mortgage; and on the 6th of February, 1893, a decree was made for the purpose of affording the relief prayed for by mortgagee. In this decree it was ordered, adjudged, and decreed "that the Charleston, Cincinnati & Chicago Railroad Company is a corporation organized and chartered by the states of North Carolina, South Carolina, Tennessee, and Kentucky for the purpose of constructing, owning, controlling, and operating a railroad," etc., and the special master appointed was authorized and directed to advertise the premises, property, and franchises of said company and make sale as provided in decree. This decree was also entered as a decree of the circuit court of this district in the ancillary proceedings which had been regularly instituted and conducted. By virtue of this decree the special master made sale on the 2d May, 1893, and executed a deed to the purchaser, Charles E. Hillier, of Boston, conveying to him all the property and franchises of the Charleston, Cincinnati & Chicago Railroad Company. The said Charles E. Hillier, after having been put in

possession of said property and franchises, determined to form a new corporation, in accordance with the laws of the state of North Carolina (1 Code N. C. §§ 697, 698, 2005). In compliance with these sections, on the 20th of June, 1894, he executed, under his hand and seal, a declaration constituting a new corporation, to be invested with all the rights, powers, privileges, and franchises of the Charleston, Cincinnati & Chicago Railroad Company in this state. For the purpose of effecting a complete working organization, he gave this new corporation the name of Ohio River & Charleston Railroad Company of North Carolina, appointed six directors, and designated the amount of capital stock, and the number of shares into which the capital stock should be divided, and caused a certificate of such organization to be duly filed in the several counties of North Carolina in which the said railroad was situated. On the 13th of November, 1894, the said Charles E. Hillier executed and delivered a deed to the Ohio River & Charleston Railway Company of North Carolina, conveying to said company so much of the property and the rights, privileges, and franchises of the Charleston, Cincinnati & Chicago Railroad Company as were conveyed to him, as purchaser, by the special master, which are situated in the state of North Carolina, or were derived from the laws of said state. The granting of the rights, privileges, and powers which constitute the franchises of a corporation are matters under the control of the legislature, and, within the limits of constitutional power, the legislature may adopt, by statute, any mode of conferring and investing such corporate franchises, or continuing the existence of those franchises previously granted, which had been acquired by a purchaser under execution sale, or under sale made by the decree of a court having authority by virtue of the laws of the state to order sales. Reasons of public policy require the continuance of railroads in a condition of useful and efficient operation, and statutes enacted for such beneficial purposes should be liberally construed in ascertaining the intention of the legislature for preserving the full accommodations and advantages arising to the public from such corporations. After careful consideration, I am of opinion that the said proceedings of Charles E. Hillier were regular, sufficiently specific, and in accordance with the laws of this state; that the former charter of the Charleston, Cincinnati & Chicago Railroad Company has been dissolved in accordance with state laws, and that said company no longer has corporate existence in this state; that the Ohio River & Charleston Railroad Company is a separate and independent domestic corporation, and has no other connection or relation with the dissolved Charleston, Cincinnati & Chicago Railroad Company, except it is legally invested with the property and franchises that formerly belonged to the said dissolved corporation. There can be no doubt as to the power of the legislature, under the present constitution of North Carolina, to repeal and dissolve railroad charters granted since the adoption of said constitution. Railroad Co. v. Rollins, 82 N. C. 523; Young v. Rollins, 85 N. C. 485; Marshall v. Railroad Co., 92 N. C. 322. I have carefully examined and con-

sidered the cases cited by counsel of defendant, and have the opin-
ion that the principles announced do not conflict with the legal
views I have expressed in relation to the facts of the case be-
fore the court. I will cite only one case mentioned in briefs, as
it refers to other cases relied upon by counsel of defendant: Good-
lett v. Railroad, 122 U. S. 391, 7 Sup. Ct. 1254. I concur with coun-
sel of defendant in their opinion that the legislature of this state
has, in sections 1932 to 1934 of the Code, manifested a clear and
positive intention that railroad corporations shall not be created
by the action of associated persons otherwise than as provided in
such sections. Those sections refer only to the mode and manner
or creating railroad corporations, and not as to the methods of con-
tinuing the existence and operation of railroad franchises in the
hands of purchasers at judicial sales. The property of railroads
must be kept in association with their franchises, to preserve value,
to give credit to such corporations, to secure creditors, and keep
railroads in operation for the benefit of the public, which was the
primary object of the legislature in bestowing such corporate fran-
chises. Such legislative purpose is clearly manifested in the Code
of North Carolina, in sections 697, 698, 2005, and other sections.
Gooch v. McGee, 83 N. C. 59. The defendant, in its petition for
removal, claimed to be a citizen and resident of the state of South
Carolina. It could not found this claim upon any relation which
it had to the Charleston, Cincinnati & Chicago Railroad Company,
for all of the title, estate, interest, and equity of redemption of this
company to the mortgaged premises, rights, property, assets, and
franchises were barred and forever foreclosed by the decree for
sale and foreclosure made in the circuit court, which was duly exe-
cuted by the special master. In the briefs of counsel, residence
and citizenship in South Carolina are founded upon the alleged
facts that Charles E. Hillier, after his purchase, "obtained a char-
ter by special act of the legislature of Virginia approved February
12, 1894, and filed certain articles of incorporation with the sec-
retary of state of South Carolina, under the laws of said state;
he, the said Hillier, having conveyed the property and franchises
of his said railroad purchase to the Ohio River & Charleston Rail-
way Company." Conceding these alleged facts to be fully estab-
lished, I am of opinion that the foreign corporation organized un-
der that act has never been recognized and adopted by the legisla-
ture of this state, and has not superseded or destroyed the domestic
corporation organized by the said Hillier under the laws of this
state, or absolved the Ohio River & Charleston Railway Company
of North Carolina from the discharge of the functions, duties, ob-
ligations, and responsibilities which were assumed by its domestic
organization. The said Hillier had no authority or power to dis-
solve such domestic corporation, or transfer its franchises and prop-
erty, without the consent and approval of the legislature of North
Carolina.

As the proceedings for removal of this case were defective and
ineffectual, and the case is now rightfully pending in the state
court, I cannot make an order to remand. It is therefore consid-

ered and ordered that the proceedings in this court for removal be dismissed, with costs to be taxed against the petitioner, the defendant in this case.