MRS C. JAMES, Administratrix of W. A· James v. WESTERN NORTH
CAROLINA RAILROAD COMPANY.

*Action for Damages—Railroad—Corporation—Sale of Railroad
Under Second Mortgage—Continued Liability of Railroad
for Torts—Purchaser—New Corporation—Section 697 and
698 of The Code.*

1. A mortgagor in possession of the mortgaged property with the consent
of the mortgagee, after the day of payment has passed, is the owner
of equity of redemption only but is liable for damages done to others
in the use and enjoyment of the property.

2. A purchaser at a sale of property under a second mortgage subject to a
first mortgage acquires only the equity of redemption but the
mortgagor is not released from liability for ne debt secured by the
latter.

3. The sale of the Western North Carolina Railroad under a second mort-
gage and a conveyance thereunder subject to the first mortgage
upon its franchise and corporate property did not extinguish the
corporate existence of the Company nor release it from liability
to the public for the manner in which it is operated.

4. The sale and conveyance of the property and franchises of the Western
North Carolina Railroad Company made by a special Master to the
Southern Railway Co., a foreign corporation, under a decree of fore-
closure of a second mortgage, subject to an existing first mortgage,
did not *ipso facto*, under Sections 697 and 698 of *The Code* make the
purchaser a domestic corporation, nor did such sale and purchase
make the Western North Carolina Railroad an integral part of the
Southern Railway corporation.

5. In order that the sale of the franchise and property of a corporation
under mortgage shall have the effect of a dissolution of such corpor-
ation as provided in Section 697 of *The Code*, another corporation
must be provided, as contemplated in Section.1936 of *The Code*, to
take its place, and assume and discharge the obligations to the public
growing out of the grant of the franchise, and until that is done the
old corporation continues to exist and when it is done the new
corporation will be a domestic corporation.

6. It was neither the purpose nor effect of Sections 697 and 698 of *The Code*
to create a foreign coporation in this State.

7. The effect of the sale of the Western North Carolina Railroad Company
franchises and property under a second mortgage, subject to a first
mortgage which was assumed by the purchaser, was to place the
purchaser (the Southern Railway Company) in the place of the

mortgagor in its relation to the trustee of the first mortgage, with the right to run and operate the road as agent of the mortgagor, but the old corporation was not extinguished but is still in existence and liable for damages caused by the *mal*-administration of its agent which liability can be enforced against the property which it allows the "Southern," to use

ACTION for damages for the negligent killing of plaintiff's intestate, tried before *Starbuck, J.,* and a jury at May Term, 1897, of ROWAN Superior Court. The facts are stated in the opinion. There was a verdict for the plaintiff for $15,000 but from the ruling of his Honor that the defendant was not liable thereon plaintiff appealed.

*Messrs. L. S. Overman, A. C. Avery* and *Long & Long,* for plaintiff (appellant).

*Messrs. Charles Price, G. F. Bason* and *F. H. Busbee,* for defendant.

FURCHES, J.: The Legislature of North Carolina in 1855 passed an Act, known as the charter of the "Western North Carolina Railroad." Under this charter a company was formed and organized, known as The Western North Carolina Railroad Company. This Company located and constructed a Railroad from Salisbury in the County of Rowan to Paint Rock, in the County of Madison, and also from Asheville in Buncombe County to Murphy in Cherokee County. This road was known and operated as The Western North Carolina Railroad from the date of its construction until April, 1884, when The Western North Carolina Railroad Company leased the same to a corporation known as the "Richmond & Danville Railroad Company" for the term of ninety-nine years. Upon the execution of this lease, this last named Company went into possession and control of said road, and ran and operated the same until 1894. On the first day of September, 1884, the "Western North Carolina Railroad Company" executed a mortgage to "The Central Trust Company of New York" in which it conveyed

all its property of every kind, including its franchise, which mortgage is not yet due. And on the second day of September, the said Western North Carolina Railroad Company made and executed a second mortgage to said Central Trust Company, and again conveyed all its property of every kind, including its franchise, but subject to the first mortgage mentioned and the payment of the bonds therein secured.

The bonds secured by this second mortgage being due and not being paid, The Central Trust Company brought suit in the Circuit Court for the Western District of North Carolina for a foreclosure and sale under the second mortgage. Under the proceedings in this suit a decree of foreclosure was had, subject to the lien of the first mortgage which had not been satisfied, an order of sale was made, a special master appointed to make the sale, which he did in August 1894, when the "Southern Railway Company," a corporation organized and existing under the laws of the State of Virginia, became the last and highest bidder. This sale was duly reported to said Court and confirmed; the said Southern Railway Company declared to be the purchaser; and the special master was directed to make a deed to the purchaser, the Southern Railway Company, conveying to it all the property of every description, including the franchise of the Western North Carolina Railroad Company subject to the lien of the first mortgage, which he did on the 22nd of August 1894. And the said Southern Railway Company at once went into possession and control of the said Western North Carolina Railroad property, and has been running and operating the same ever since under said purchase and deed.

The intestate of the plaintiff was an employee of the Southern Railway Company and was killed in 1896. There were four issues submitted to the jury:

1. Was the death of plaintiff's intestate caused by the

negligence of a fellow servant, as the sole proximate cause? Ans. No.

2. Was the death of plaintiff's intestate proximately caused by the negligence of the Southern Railway Company, which at the time was operating the road? Ans. Yes.

3. Is the defendant answerable for the negligence of the Southern Railway Company in causing the death of plaintiff's intestate? Ans. No.

4. What damage is the plaintiff entitled to recover? Ans. $15,000.

The third issue was withdrawn from the jury and answered by the Court as a question of law, and the ruling upon this issue constitutes the only question presented by this appeal for our consideration. The correctness of this ruling, it seems to us, involves or may involve the consideration of two questions:

Did the Western North Carolina Railroad corporation become extinct? And did the Southern Railway Company as a *corporation* succeed the Western North Carolina Railroad Company as a *corporation* upon the completion of the sale under the foreclosure proceedings and execution of the deed by the special master?

By the laws of this State, the mortgagee is the owner of the legal estate in the mortgaged property, and the mortgagor is the equitable owner with the right to pay the debt and discharge the mortgage. But after the day of payment has passed, he then has only the equity of redemption. *Parker* v. *Beasley*, 116 N. C., 1; *McIver* v. *Smith*, 118 N. C., 73. But the mortgagor in possession of the mortgaged property by the consent of the mortgagee, is considered to be so far the owner as to be entitled to the rents, tolls and perceptions of the mortgaged property without being liable to account, and is liable for damage wrongfully done to others in its use and enjoyment. *Dunn* v. *Tillery*, 79 N. C.,

497 cited and approved in *Killebrew* v. *Hines*, 104 N. C., on page 188.

At the time the second mortgage was executed, the legal title to this property was in the "Central Trust Company of New York," having been conveyed to this company by the first mortgage, and the Western North Carolina Railroad Company had only the equity of redemption when it executed the second mortgage, and only the equity of redemption at the time of said sale. And as the Southern Railway Company claims under the second mortgage, it can have no more, no greater, estate than The Western North. Carolina Railroad Company had at the date of the sale under the second mortgage.

By the sale of the special master under the second mortgage, the purchase thereunder and the express assumption of the first mortgage debt binds the purchaser, the "Southern Railway Company" for this debt. And as between the Southern and the Western, it makes the "Southern" the principal and the "Western" its surety. But this does not release the "Western" nor the property mortgaged to pay this debt, from liability. And this, it seems to us, would be a reason for not considering the Western North Carolina Railroad Company as extinct. *Woodcock* v. *Bostic*, 118 N. C., 823; *Keller* v. *Ashbord*, 133 U. S., 610.

The franchise and the corporate property must go together. They cannot be separated. There cannot be a corporation without a franchise. *Gooch* v. *McGee*, 83 N. C., 59. This rule does not interfere while the mortgagor is in possession with his operating the road by the consent of the mortgagee, because he is considered the owner, and is the owner for certain purposes, and is responsible to the public for the manner in which it is run. *Dunn* v. *Tillery* and *Killebrew* v. *Hines, supra.*

But how is it if the contention of the "Southern" is true?

The first mortgage conveys everything, including the franchise. The Southern says the "Western" was authorized to make this mortgage, and to convey the franchise. But to enable it to have a corporate existence, it must also have a franchise. There cannot be two independent corporations dependent upon one franchise. Nor can the "Southern" be a corporation built upon the franchise granted to the "Western," while that franchise is owned by the Central Trust Company of New York. *Gooch* v. *McGee, supra.*

It is contended that, under Sections 697 and 698 of *The Code*, the sale and conveyance by the special master to the "Southern Railway Company", *ipso facto*, made the Southern a corporation. This does not seem to us to be so. If it is a corporation, is it a domestic or foreign corporation? The Southern is a foreign corporation existing under the laws of the State of Virginia. Virginia has no power to incorporate a railroad company in North Carolina as it has no power to grant a franchise in North Carolina. Nor does the purchase of this road make it an integral part of the "Southern Railway corporation." The property a railroad may own is not its corporation, any more than a horse a man may own is an integral part of the man who owns it. The corporation is an entity, resting upon a grant of the sovereign and clothed with some portion of the sovereignty. A railroad corporation is *quasi* public, and these extraordinary powers —franchises—are supposed to be granted for the benefit of the people as well as for the benefit of the corporators. It is presumed, by the acceptance of the franchise, that the corporators accept it subject to its burdens. This being so, it cannot be that the corporation could sell and transfer this franchise—this sovereignty—without the express permission of the sovereign (the Legislature) to do so. *Logan* v. *Railroad Co.,* 116 N. C., 940; *Railroad Co.* v. *Winans,* 17 How. 30.

It is claimed by the Southern that this express authority is given by Sections 697 and 698 of *The Code.* These

Sections were passed in 1872, and we think should be considered in connection with Section 701 which was passed in 1879, and Sections 1936 and 2005 referred to in Section 701.

If this be the correct reading of these Sections of *The Code,* it would seem that while Section 697 does say that these facts, *ipso facto,* dissolved the corporation, another corporation must be provided, as in Section 1936 of *The Code,* to take its place before it is dissolved; that there must always be a corporation in existence liable to the public for the duties and obligations assumed by the grantee for the privileges conferred in the grant of the franchise; and that the old corporation must continue to exist until this is done; and that when the new corporation is formed it will be a domestic corporation. It cannot be that the Legislature ever intended, by this general legislation, to create a foreign corporation here, when it could not do so by positive and direct enactment.   119 N. C., 918, Judge Dick's opinion in *Bradley* v. *Railroad,* published in the Appendix.

By this view of the case, all the interests of the parties may be harmonized.   The "Southern," the purchaser of the equity of redemption of the "Western," stands in the shoes of that company.   The Southern is in effect the mortgagor in its relations to the "Central Trust Co. of New York," the mortgagee of the first mortgage, and being in possession of the road, its property and franchise, has the right to run and operate the same.   But the old corporation, still in existence, is liable for damages caused by the *mal-*administration of the Southern, which it allows to run and operate the road.   But the property of this road which the "Southern" is allowed to use will be held liable to the public for damages. *Charlotte* v. *Railroad Co.* 4 L. R. A., 135; *Brunswick Gas Co.* v. *United Gas Co.* 35 Am. St. Rep. 385, and note on p. 390.

It therefore follows that, in our opinion, the Court below

erred in its ruling upon the third issue. This ruling is reversed, and judgment should be entered for the plaintiff according to the verdict of the jury.

Error and reversed.