W. J. McLAMB, Administrator of J. R. McLamb, v. THE WIL-
MINGTON & WELDON RAILROAD COMPANY.

(Decided April 12, 1898).

*Action for Damages—Railroads—Negligence—Damages
—Evidence—Trial—Remarks of Counsel.*

1. Where, on the trial of an action, the remarks of counsel are improper,
   or not warranted by the evidence, and are calculated to mislead or
   prejudice the jury, it is the duty of the Court to interfere.

2. Where the trial judge interferes to stop the improper remarks of
   counsel and cautions the jury against their effect, no exception to
   the same can be sustained on appeal.

3. In the trial of an action for damages for injuries resulting in the death
   of plaintiff's intestate, it appeared that deceased was negligently
   standing on a trestle, 30 feet high and 400 feet long; that defend-
   ant's engineer was running a heavy train down grade at the rate
   of about a mile a minute; that, when three-fourths of a mile away,
   he saw deceased, but made no attempt to slow up, and gave no sig-
   nal until he was so near deceased that the train could not be stopped
   before it struck and killed deceased, and that the engineer thought
   that deceased was a trestle hand who could take care of himself by
   standing on the edge of a platform in the middle of the trestle.
   *Held*, that defendant was negligent and liable.

4. Where, in the trial of an action for damages, the trial judge instructed
   the jury that the measure of damages for negligently causing the
   death of plaintiff's intestate was the gross income, less living ex-
   penses, and in another part of the charge told the jury to consider
   decedent's capacity for earning money in determining his income;
   *Held*, that such instruction was not calculated to mislead the jury
   into believing that they might consider any source of income other
   than decedent's earnings, especially when the argument of counsel
   showed that the jury understood the instruction.

5. It is competent to show the value of the personal services of a dece-
   dent, who was a skilled farmer, by the estimates of experienced
   farmers who were well acquainted with him.

CIVIL ACTION tried before *Adams, J.*, and a jury at
Fall Term, 1897, of JOHNSTON Superior Court. The
afcts appear in the opinion. There was a verdict for

McLamb v. Railroad.

the plaintiff for $2,000, and from the judgment thereon the defendant appealed.

*Mr. J. H. Pou* for plaintiff.

*Messrs. Aycock & Daniels* and *W. C. Munroe* for defendant (appellant).

Douglas, J.: This was an action brought by the administrator of J. R. McLamb to recover damages for the killing of his intestate by the alleged negligence of the defendant. The deceased was on a trestle about thirty feet high, belonging to the defendant company, and was struck by the defendant's train, knocked from the trestle and killed. It appears from the testimony of the engineer that the train was 25 or 30 minutes late, and was running at the rate of fifty or sixty miles an hour, and could not be stopped in less than four hundred and fifty or five hundred yards; that when three quarters of a mile south of the trestle, he saw two men on the track; that he could not locate them until he got within half a mile, when he saw they were on the trestle; that he blew the whistle at the crossing, about half a mile from trestle, when one of the men got off the trestle entirely, while the other, the deceased, stepped off the track on to a narrow platform on the side of the trestle, and then stepped back and began to run across the track; that he was then two hundred or two hundred and fifty yards south of the trestle, when he blew the danger signal, put on the emergency brakes, sanded the track and did everything he could to stop the train; that up to that time he had done nothing to stop the train or reduce its speed, because he thought the deceased was in a safe place on the platform, where he had often passed trestle hands at full speed; that the

trestle is a little over four hundred feet long, and the platform, situated about midway the trestle, is one hundred and forty feet long and five feet five inches wide from the T iron to the railing ; that the engine and cars project nearly two feet beyond the rail, leaving a clear space on the platform of about three and a half feet, where a person could stand with perfect safety.

This is of course the evidence most favorable to the defendant, and is in the main sustained by other testimony; but there is strong conflicting evidence tending to show that the platform was not a safe place from a passing train, and that the engineer did not blow at the crossing, where it was the custom to blow.    There was also testimony going to show that the trestle was much used as a passage way by other than railroad employees.

The issues submitted and the answers thereto, the prayers of the defendant, and the charge of the court, as they appear in the record, are as follows:

1. Was J. R. McLamb killed by the defendant's train?    A.  "Yes."

2. Was he killed by the negligence of the defendant? A.  "Yes."

3. Did J. R. McLamb, by his own negligence, contribute to his injury?    A.  "Yes."

4. "Notwithstanding the negligence of J. R. McLamb, could the defendant's engineer, by the exercise of ordinary care, have prevented the injury?"    A.  "Yes."

5. "What damage, if any, has the plaintiff sustained?"    A.  "$2,000."

Before the close of the evidence the defendant requested the Court to reduce its charge to writing and read the same to the jury, which was done.

Before the close of the evidence the defendant re-

quested the Court to give the following special instructions :

"*a*. It is not the duty of the defendant, through its engineer, to lessen the speed of the train as it approached the trestle, until he had reasonable grounds to believe that the plaintiff's intestate was not capable of caring for himself."

(This special instruction was included in the charge of the Court as read to the jury.)

"*b*. The engineer had a right to assume that any one who had entered upon the trestle was capable of caring for himself under all circumstances of this case, until such time as the person on the trestle exhibited signs of terror; and if the jury shall believe that as soon as the engineer discovered that the intestate of the plaintiff was frightened the engineer did all in his power to stop the train, the defendant was not guilty of negligence, and the jury will so find."

(This special instruction was included in the charge of the Court, as read to the jury.)

"*c*. If the jury believe that the engineer was a competent man, and was ordinarily and reasonably observant of his duties, and was honestly mistaken in his judgment, and that the accident resulted from a mistake of judgment and not from negligence, then the jury will find that the defendant was not guilty of negligence."

(This special instruction was included in the charge of the Court, as read to the jury.)

"*d*. A mistake of judgment is not negligence. Ordinary and reasonable care is all that is required of an engineer."

122—55

McLamb v. Railroad.

(This special instruction was included in the charge of the Court, as read to the jury.)

"I. That upon the whole evidence, the plaintiff's intestate was guilty of contributory negligence."

(This instruction was not given, for the reason that the third issue, as to the negligence of the deceased was, by consent of plaintiff, answered in the affirmative before the charge of the Court was read).

"II. That the defendant, upon the whole evidence, is not guilty of negligence."

(This was refused, and defendant excepted.)

"IV. That by plaintiff's own evidence, a witness who was well acquainted with the intestate and in full view of him, within a distance short of that within which the train could have been stopped, mistook the intestate for an employee of the railroad; and it could not be negligence on the part of the defendant to make the same mistake the plaintiff's own witness made."

(This was refused, except in so far as it may be covered by the charge as read.)

"V. That if the jury shall believe that the engineer mistook the intestate for an employee of the road until it was too late to avoid the accident, then the defendant is not guilty of negligence."

(This was refused, except in so far as it may be covered by the charge as read.)

"VI. That if the jury shall believe that the defendant had posted notices at each end of the trestle to the effect: "Danger: this bridge is no thoroughfare; keep off!" then it was not negligence on the part of the defendant for its engineer to assume that any person on the bridge was an employee of the defendant and would put himself in a place of safety."

(This was refused, except in so far as it may be covered by the charge as read to the jury.)

"VII. That if the jury shall believe that there was a platform on each side of the trestle extending five feet and five inches wide from rail to edge of platform, this was a place of safety, and the engineer had a right to expect the intestate McLamb to get upon said platform and it was not the duty of the engineer to stop his train, or endeavor to do so, until he discovered the intestate had become "rattled."

(This was refused, except as covered by the charge as read to the jury.)

"VIII. It was the duty of the plaintiff's intestate not to go on the trestle, and especially without stopping to look back and ascertain whether a train was approaching or not, and in so going on said trestle he was guilty of contributory negligence."

(This special instruction was not given, for the reason that previous to the time when the same was asked to be given, counsel for the plaintiff had agreed that the issue as to the negligence of the intestate of the plaintiff should be answered in the affirmative.)

"IX. That the measure of damages, if the jury find for the plaintiff, is the present value of the gross income of the plaintiff's intestate from his personal services, less the cost of living and his expenditures. This is his net income, and these damages could not exceed the present value of the net accumulations to the estate of the plaintiff, based upon the expectancy of life."

(This special instruction was substantially included in the charge as given.)

"X. The damages cannot exceed a sum· which, put at interest until the natural death of the intestate,

would equal what he would have saved had he not been killed."

(This special instruction was not given as requested. The same was refused, except in so far as it was covered by the charge as read.   Defendant excepted.

It was admitted in the argument on both sides that only the net earnings from the labor and personal services of the deceased could be considered by the jury in estimating the damages, in case any damages should be awarded, and that the income from any property of the defendant should not be considered.

To the refusal of the Court to give such of the above special instructions as were refused, the defendant excepted.

The Court gave the jury the following instructions in writing:

"1. It is the duty of the plaintiff to satisfy the jury, by a preponderance of the evidence, that the deceased was killed by the train of the defendants, or was knocked from the track by the train and was killed by the fall. If the plaintiff has so satisfied your minds, then you should answer the first issue, "yes." If he has failed to satisfy your minds that the deceased was killed as above stated, then you need not consider the other issues at all, for if the train did not cause the death of McLamb the defendant would not be liable in damages, and you should answer, "no."

"2. If you should find that the train did cause the death of Mr. McLamb, as alleged by the plaintiff, then you will proceed to consider the other issues.

"It is agreed that you may answer the third issue in the affirmative, so you need not consider that issue at all.

"3. As to the second and fourth issues, the Court

charges you that the plaintiff should satisfy you, by a preponderance of the evidence, that the servants of the defendant company could, by the exercise of ordinary care, have avoided the killing of deceased, and that they or any of them did not exercise ordinary care in attempting to avoid the accident.

"Now, with reference to these two issues, the second and fourth, the Court charges you, that if you shall find, by a preponderance of the evidence, that the engineer could have stopped his train before reaching the deceased, after he saw him leave the platform (if you shall find, that he went on the platform), then you shall find that the servant of the defendant did not exercise ordinary care in attempting to avoid the accident, and should answer both the fourth and the second issues, "yes;" otherwise, answer, "no." For it was the duty of the engineer to do all in his power to stop his train, after he saw the deceased on the trestle in a place of danger.

"The Court charges you further, that if you are satified, by a preponderance of the evidence, that the engineer, after he saw the deceased on the trestle, a place of danger, could have so reduced the speed of his train as to enable the deceased to reach a place of safety, and that he failed to do so, then you should find that he failed to exercise ordinary care and diligence in attempting to avoid the accident, and you should answer the second and fourth issues, "yes." Provided, of course, the deceased lost his life by reason of such negligence.

"Now, if you shall find, by a preponderance of the evidence, that the deceased was simply walking on the trestle as testified to and that the engineer could have seen him from a quarter to half a mile away, and that the engineer made no effort to stop his train until he got

within such distance that it was impossible to stop before reaching the place where the deceased was, and that the deceased was knocked from the trestle and thereby lost his life, then you will answer both the second and the fourth issues, "yes," even though you may be satisfied the engineer, at the last moment, did all in his power to stop the train. If the engineer saw a person on the trestle when he was about half a mile away, with his train running at the rate of fifty or sixty miles per hour, not knowing who he was or at what place on the trestle he was, then it was his duty to give warning of the approach of the train; and as he approached, if he saw he had not reached a place of safety, it was his duty to reduce the speed of his train and acquire control over the movement of his engine until he saw that said person had reached a place of safety. If the plaintiff has satisfied you by a preponderance of the evidence that the engineer failed to do this, when he saw the person on the trestle in danger, and that by reason thereof the deceased was struck and killed, then you should answer the second and the fourth issues, "yes." If you find the contrary, "no." Under these circumstances it is the duty of the engineer to stop his train, if possible, and if necessary in order to save life, even though the person on the trestle was a trespasser and was on the trestle against the orders of the company.

"4. It was not the duty of the defendant, through its engineer, to lessen the speed of its train as it approached the trestle, until he had reasonable grounds to believe that plaintiff's intestate was not capable of caring for himself.

"The engineer has a right to assume that any one who had entered on the trestle was capable of caring for himself under all the circumstances of this case,

until such time as the person on the trestle exhibited signs of terror; and if the jury shall believe that as soon as the engineer discovered that the intestate of plaintiff was frightened the engineer did all in his power to stop the train, the defendant was not guilty of negligence, and the jury will so find.

"If the jury believe that the engineer was a competent man, and was ordinarily and reasonably observant of his duties, and was honestly mistaken in his judgment, and that the accident resulted from a mistake of judgment and not from uegligence, then the jury will find that the defendant was not guilty of negligence. A mistake of judgment is not negligence; ordinary and reasonable care is all that is required of an engineer.

"If you answer the first, the second and the fourth issues "yes," then you will proceed to answer the fifth, or last, issue. If you answer the other issues in the affirmative, the Court charges you that you should award some damages in your verdict.

"In determining the damages, the Court gives you this rule: The measure of the damages is the present value of the gross income of the deceased less the cost of living and his expenditures—that is, his net income. And these damages cannot exceed what the jury believe to be the present value of the accumulations to the estate of the deceased, based upon his expectancy for life as prescribed in *The Code*, to which your attention is called. First, you will ascertain what the net value of his income was; then you will consider how long the deceased was expected to live considering his age; then you will ascertain what sum would be the present value of his net earnings. When you have arrived at this amount, you should make it in figures the answer to the last issue. In determining this amount,

you should consider the evidence bearing on the capacity of the deceased to earn money, his character for thrift and industry or the contrary, the condition of his health and his capacity to work. You should also consider that as he grew older the less able he would be for work, and perhaps the greater his expense. As to the probable length of his life, you should consider the table of expectancy as laid down in the *Code*, to which your attention has been called by counsel, but you may also consider the condition of the health of the deceased. Of course, in passing upon this, you will ascertain the age of the deceased at the time of the accident. You should consider all these things, and all the evidence on both sides, and the arguments of counsel addressed to you, and render such a verdict as you deem just.

"It is the duty of the plaintiff to make out his case by the greater weight of the evidence. You should consider the character of the witnesses, their interest in the result of this suit (if they have any), their bearing upon the stand. In determining the preponderance of the evidence, you are not necessarily to be governed by the number of witnesses on either side or upon any point, but you should determine what evidence you believe to be true; decide how this matter is, and render your verdict in accordance with that finding."

All those parts of the charge included in brackets were excepted to by the defendant.

During the progress of the trial there was some verbal sparring between counsel, to which exception was taken, which, however, unnecessary and perhaps unbecoming, was deprived of any harmful influence by the caution of his Honor. Much allowance must be made for the zeal of counsel in a hotly contested case, especially where the colloquy is mutual; and indeed much lat-

itude is necessarily given in the argument of a case where there is conflicting evidence; but counsel should be careful not to abuse their high prerogative, and where the remarks are improper in themselves, or are not warranted by the evidence and are calculated to mislead or prejudice the jury, it is the duty of the court to interfere, as it did in this case. This exception cannot be sustained.

By the consent of counsel, the third issue as to the negligence of the deceased, was answered in the affirmative by the court.

This raises the question whether the defendant could, by the exercise of ordinary care, have prevented the injury notwithstanding the negligence of the deceased, and whether the negligence of the defendant could, under all the circumstances of the case, be held to be such gross and *continuing* negligence as would be deemed the proximate cause of the injury. The doctrine of the "last clear chance" means nothing else. If, in spite of the negligence of the deceased, the defendant could by the exercise of reasonable care, have discovered the dangerous situation of the deceased, and have prevented the accident by any means that would not have really endangered the safety of its train, the defendant would have been guilty of negligence, and such negligence would be the immediate and, therefore, proximate cause of the injury. This is the principle laid down in *Davies* v. *Mann* and *Gunter* v. *Wicker*, and has now become the settled rule of this court. Its logical result is the rule of continuing negligence, which has also been repeatedly recognized and approved by us. If the negligence of the defendant, even if it preceded the negligence of the deceased, were such as to mislead the deceased, and induce or permit him unknowingly to take

such risks as otherwise he would not incur, then the negligence of the defendant would *continue* in its natural results up to the moment of the accident, and would be the proximate cause of the injury. Again, if the preceding negligence of the defendant were such as to deprive it of the power to take advantage of the last clear chance, should it occur, its negligence would be continuing and proximate, inasmuch as its inevitable consequences would be the cause of the injury. Much learning has been spent in the discussion of contributory and concurring negligence and proximate cause, which is unnecessary here to review, and many of the attempted definitions and distinctions show more acuteness and refinement of intellect than practical application in the trial of a cause. Of course, the proximate cause of all such injuries is the train striking the man; and yet, if the man were not there, he would not be struck. Hence, in one sense, his mere presence would be contributory, and, · if at all negligent, would prevent a recovery no matter how great or continuing the negligence of the defendant. So extreme a construction would be in violation of every principle of natural justice, and is not required either by law or public policy. Contributory negligence is the want of such care as a prudent man would ordinarily take under similar circumstances, and must in its natural results immediately concur in producing the injury. The degree of care required would depend upon the peculiar circumstances of each case, since, as is said in *Grand Trunk Railway* v. *Ives*, 144 U. S., 408, 417, "what may be deemed ornary care in one case, may, under different surroundings and circumstances, be *gross negligence.*"

But the same relative degree of care is required of the defendant as of the plaintiff; and where the defendant

McLamb *v.* Railroad.

has, by its own act, increased the danger, it must take greater care to prevent the natural or probable results of the greater danger it has created. It cannot take advantage of its own wrong to escape all liability on account of the contributory negligence of the plaintiff by holding him to a greater degree of care to avoid a greater danger of which he had no warning, and had no reason to anticipate.

In the present case the engineer was running a heavy train down grade at the rate of fifty or sixty miles an hour, about a mile a minute. When three-quarters of a mile away, he saw two men upon the track, whom he would overtake in three-quarters of a minute, and yet he did not blow his whistle, or give them any warning of swiftly approaching danger. He says he blew at the crossing, for what purpose he does not say, and there is testimony that he did not blow at all. When within half a mile, he saw the deceased upon the trestle, admittedly in a place of danger to the ordinary man, and yet he neither checked the speed of his train, nor blew the ordinary alarm, because he thought the deceased was a trestle hand and knew how to take care of himself. This mistake in judgment was a death sentence upon a fellow being. Why did he not give to the deceased the benefit of the doubt? He might at least have sounded the whistle when he first saw him, and have continued sounding it until he passed him, without any inconvenience. If he saw any probability of danger, he ought to have reduced the speed of his train so as to bring it within his control, and, if necessary, to stop entirely. So much is due to the sanctity of human life. A man upon a trestle thirty feet high and over four hundred feet long has not the same opportunity of escape as if

he were on the ground, where he could jump off the track without serious danger.

The engineer says he did not blow the danger signal or check the speed of his train until he was within two hundred or two hundred and fifty yards of the trestle, when it was impossible for him to stop in time to save the deceased. We think that the defendant was guilty of culpable negligence, and that such negligence continued in its inevitable consequences up to the moment of the accident, and was, therefore, the proximate cause of the injury.

Of course a railroad company is not bound to the same degree of care to prevent injury to persons walking along its ordinary track as it would be at the intersection of a highway, and such a person, whether trespasser or licensee, would be held to a greater degree of care, but the rule is the same in principle. Each is bound to that relative and mutual degree of care and diligence required by the peculiar circumstances and surroundings of the case. These principles are discussed fully in *Norton* v. *Railroad*, at this term, where authorities are cited.

It is impracticable to examine in detail each of the numerous exceptions to the charge, and the refusal to charge, as we see no error in either. Some parts of the charge, taken alone, might be subject to criticism, but, taken as a whole, we think it presented the merits of the action in a fair and intelligible manner. It does not seem possible that the jury could have been misled into supposing that the Court intended them to take into consideration any other source of income except the net earnings of the deceased arising from his personal services, after deducting his necessary personal expenses. This seems to have been clearly understood by counsel for both sides, and was so argued to the jury. Nor do

we think there was error in the admission of testimony as to the net value of the personal services of the deceased. The estimates were all made by persons well acquainted with him and his habits and surroundings; and in each case the facts were given in detail on which the estimate was based. The personal services of a skilled farmer are worth more than the mere manual labor he may perform. His judgment, skill and experience, gained by a long life of successful toil, should be also considered, and none are better qualified to give such an estimate as those who know him well, and are themselves farmers of character and experience.

The judgment is affirmed.

Affirmed.

FAIRCLOTH, C. J., and MONTGOMERY, J., dissent.