PERRY v. WESTERN NORTH CAROLINA RAILROAD CO.

(Filed June 5, 1901.)

1 RAILROADS—*Lessor—Lessee—Negligence.*

The lessor of a railroad is liable for the negligence of the lessee in the operation of the road.

2. RAILROADS—*Negligence—Trespasser.*

It is not error to refuse to charge that a railroad owes no duty to a trespasser except not to injure him wantonly or wilfully.

3. ARGUMENTS OF COUNSEL—*New Trial—Improper Remarks of Counsel—Trial.*

The improper remarks of counsel in this case constitute ground for a new trial.

ACTION by J. A. Perry, administrator of Pink Perry, against the Western North Carolina Railroad, heard by Judge *W. B. Council* and a jury, at January (Special) Term, 1901, of the Superior Court of BURKE County. From a judgment for the plaintiff, the defendant appealed.

*Avery & Avery,* and *Avery & Ervin,* for the plaintiff.
*Geo. F. Bason,* for the defendant.

DOUGLAS, J.   This is a civil action brought by the administrator of Pink Perry, deceased, for damages for the alleged negligent killing of his intestate.   The following are the issues as submitted and answered:

1. Was the injury resulting in the death of the plaintiff's intestate caused by the negligence of the Southern Railway Company as alleged in the complaint?   Ans. Yes.

2. Did intestate by his own negligence contribute to the injury resulting in his death?   Ans. Yes.

3. Notwithstanding such negligence on the part of the said intestate, could the Southern Railway Company by the exercise of due care and prudence have prevented the killing? Ans. Yes.

4. Is the defendant answerable for the negligence of the Southern Railway Company in causing the death of the plaintiff's intestate? Ans. Yes.

5. What damage has the plaintiff sustained? Ans. $7,000.

The following are the defendant's assignments of error:

1. The defendant assigns for error such parts of the charge of the Court as are embraced by exceptions 1, 2, 3 and 4.

2. To the refusal of the Court to give the instruction numbered 13, which was prayed for by defendant.

3. To the refusal of the Court to sustain defendant's objection to the remarks of counsel as set out in its sixth exception.

4. To the finding of the Court of the fourth issue in the affirmative.

5. To the refusal of the Court to grant a new trial.

The first assignment can not be sustained. His Honor's charge was full, occupying 13 pages of the printed record, and, we think, fairly presented the case. The defendant's exceptions to the charge are somewhat "broadside" in their nature, one of them including nearly two pages of the printed charge in a single exception. We have, however, examined the charge, and think it should be sustained upon its merits. As the questions involved have been so recently and so elaborately discussed by this Court, and as a new trial must be granted upon the third exception, we do not think it necessary to further comment upon the charge.

The second assignment can not be sustained. We suppose it refers to the sixth exception, although the prayer itself is not numbered in the records. This exception could not have been given, as it is against the uniform current of our decisions.

The fourth assignment is without merit, as the question involved has been directly decided in *James v. Railroad,* 121 N. C., 523. Why it should have been put in the form of an issue in the case at bar does not clearly appear to us. As a common carrier, chartered by the State, assumes certain obligations to the public of which it can not absolve itself by its own act alone, it is primarily liable for all injuries caused by the negligent management of its road. In any event, the burden rests upon it of showing such facts as will release it from its *prima* facie, and we might almost say, its inherent liability. No such evidence appearing, there was no error in the direction of his Honor.

The matter seems to have been presented as a pure question of law. It is true the counsel agreed in the Court below that all evidence bearing upon this question, whether record, documentary or oral, that had been offered in the James case (121 N. C., 523, 530), should "be considered as introduced" in the present case. No such evidence appears in this record, and we do not feel called upon to review the James case. That a railroad company leasing its road is liable for the negligence of its lessee in the operation of the road, is well settled in this State. *Aycock v. Railroad,* 89 N. C., 321, 330; *Logan v. Railroad,* 116 N. C., 940; *Norton v. Railroad,* 122 N. C., 910, 937. The third assignment of error has given us considerable difficulty, but we are forced to the conclusion that it must be sustained. The following statement is taken from the record: "During the course of the argument by one of the plaintiff's counsel, he took occasion to compliment R. E. Simpson, conductor of a material train, and to state that he was a man of good character; had been known to him all of his life; that he had no intention to attack him and that he believed that Mr. Simpson intended to tell the facts correctly as far as they came under his observation. He said further, however, that he regretted that he could not say so much for

the witnesses Black and Hendricks, and it was transparent to every one who heard the examination that they were not fair and impartial witnesses, but were influenced by the fact that they were employees of defendant. He further stated that he had once thought that a man could take employment from this railroad company and yet feel free to tell the whole truth upon the witness stand, but that his observation within the last few years in the court-house had taught him that men who held their place at the will of a railroad company were, as a rule, subjected to great temptations which most of them could not withstand. He then said: 'I will give you an instance without mentioning any names. I was trying a case against the same defendant when an engineer was placed upon the witness stand whom I had known for 25 years, and whose character I would have sworn to upon the stand, was good. This man had been discharged for carelessness by this company and re-employed two or three months before the trial. He was introduced for the company, and on his cross-examination in chief so stated the facts bearing upon the question of negligence, in the case then on trial, as to acquit the defendant of all blame. On the cross-examination, counsel who appeared with me handed him a printed statement purporting to have been theretofore made by him giving a full account of the facts which he had just professed to narrate, and which printed statement, signed by him, was utterly contradictory of his evidence as just delivered, and that thereupon he broke down and begged with tears in his eyes that the paper should not be shown to him. Counsel further stated that he didn't then abuse that witness, for he felt he had perjured himself to put bread in the mouths of his children. He then said that he wished the jury in passing upon the testimony of employees Black and Hendricks to recollect that their bread and meat depended upon the managers of the Southern Railway Company. During the course of this

argument the defendant, through their counsel, arose and objected to such argument being made. The Court overruled the objection, and one of the counsel for defendant, S. J. Ervin, stated to his associate, G. F. Bason, the leading counsel in the case, in a tone audible to the Court, 'Why don't you except?' and in reply Mr. Bason said, 'I do not have to except now.' Defendant's counsel upon the statement of this case upon appeal insisted that his language was intended to convey the idea that he did except to the language, whereupon the Court allows such exception."

The exception does not appear to have been taken in a very regular manner; but as his Honor has allowed it, evidently for the purpose of giving the defendant the fullest opportunity of appeal, we will examine it in the spirit in which it was allowed.

This Court has said in the case of *McLamb v. Railroad,* 122 N. C., 862, 872: "Much allowance must be made for the zeal of counsel in a hotly contested case, especially where the colloquy is mutual; and indeed much latitude is necessarily given in the argument of a case where there is conflicting evidence; but counsel should be careful not to abuse their high prerogative, and where the remarks are improper in themselves, or are not warranted by the evidence, and are calculated to mislead or prejudice the jury, it is the duty of the court to interfere." The same remarks will apply to the case at bar. If the witnesses had misbehaved in any way upon the stand, either in words or manner, or showed any bias either of fear or favor, their testimony would be the proper subject of comment by counsel. In cases where the direct testimony of witnesses is diametrically opposite, some of the witnesses must be testifying improperly, either to that which they know is not true or to that of which they have no knowledge. In such circumstances it is natural that the counsel should attribute such false testimony to the opposing

witnesses. Whether he exceeds his privilege in doing so must necessarily be left largely to the discretion of the Judge trying the case, who, hearing the testimony and seeing the behavior of the witnesses can judge far better than any one else of the propriety of his comments. If that were all, we would hesitate to interfere; but counsel went far beyond any testimony in the case, and, over the objection of the defendant, related facts within his personal knowledge, not of common information, and which were not in evidence. These facts were essentially damaging in their nature, and, coming from so high a source, were capable of producing the most dangerous prejudice. That the counsel intended no impropriety, which we cheerfully admit, does not alter the case. The fact remains that such statements, coming from one of his high character and exalted position in his profession, became only the more dangerous when addressed to jurors whose confidence he justly possessed. Such statements were not in evidence, and were not properly admissible in the argument of counsel.

For the failure of his Honor to interfere at the request of opposing counsel, a new trial must be ordered.

New trial.


MONTGOMERY, J., concurs in the conclusion reached in the opinion of the Court that a new trial must be had and for the reason assigned. He thinks, however, that his Honor should have given No. 13 of the defendant's special prayers for instruction, which was in the following language: "If the jury find from the evidence that intestate went to defendant's depot for the purpose of beating a ride on one of defendant's trains, then intestate was a trespasser from the moment he entered defendant's premises and the defendant owed him no duty except not to injure him wantonly or wilfully or with such carelessness as amounts to a reckless disregard of conse-

quences." And it follows, therefore, if that view is correct, that that part of his Honor's charge which laid down the law governing the defendant's duty toward the intestate and its liability for the injury inflicted on him as that which would be applicable to one who had a right to be at the depot—excepted to by the defendant in 1, 2, 3 and 4 of its exceptions—was erroneous. The witness Brittain testified that the intestate told him a short time before he was killed that he intended beating his way on the train to Hickory from Morganton.

COOK, J., concurs in above.