This was an action for the death of the defendant at a railroad crossing at Cameron, N.C. caused by a train which was being operated at that time by the defendant Randolph Cumberland Railway Company, lessee of the defendant. Both defendants answered denying negligence and pleading contributory negligence, and the defendant Seaboard Air Line Railway Company denying that it was liable as lessor. The jury found upon the issues submitted that the plaintiff's intestate was killed by the negligence of the defendants, and that the plaintiff was not guilty of contributory negligence, and assessed damages.
The court set aside the verdict on the second issue as against the Seaboard Air Line Railway Company as a matter of law, and entered a nonsuit as to it. The said company having, however, assigned errors on the trial to the evidence and the charge appealed, as did also the Randolph Cumberland Railway Company and the plaintiff.
In August, 1917, the Randolph Cumberland Railway Company were operating a railroad between Cameron and Carthage in Moore County, which crosses the National Highway at right angles just inside the corporate limits of the town of Cameron at a point where the railroad track crosses this highway from a deep cut, which was 8 to 10 feet high on the north side and 12 to 15 feet high on the other. On the banks of this cut for some distance on each side of the railroad bushes, trees and thick growth had been permitted to grow, obstructing the view of the approaching train.
The plaintiff's intestate, driving along this highway on 22 August, 1917, in an automobile going south, crossed a bridge north of the railroad, and was approaching this crossing. The railroad train *Page 287 
was approaching the crossing from the west with a box car at the front end nearest the crossing, then two or three gondola cars, then the passenger car, and the engine attached to the rear was pushing the cars over the crossing at a speed of 8 to 10 miles per hour, the engine being in the cut. There was evidence that the engineer did not ring the bell, blow the whistle or give any warning of the approach as the train emerged from the cut on the west and entered on the highway. The train collided with the automobile, (270) and plaintiff's intestate sustained severe injuries from which he died next day.
On 23 August, 1888, the Carthage Railroad Company leased its roadbed franchise, etc., to the Raleigh Augusta Air Line Railroad Company for 99 years. In 1890 the latter company leased the property acquired from the Carthage Railroad Company, together with its own franchise rights, powers and other privileges, and some other property, to W. C. Petty for a term of 97 years. Petty operated the road for some time, and after his death the trustees named in his will, in 1906, leased all the property acquired under his lease as above to the defendant Randolph Cumberland Railway Company. In 1901 the defendant Seaboard Air Line Railway Company succeeded to the rights of the Raleigh Augusta Railroad Company.
On 20 September, 1907, the defendant Seaboard Air Line Railway Company and the defendant Randolph Cumberland Railway Company executed a lease agreement set out in the record releasing Petty's estate and substituting the defendant Randolph Cumberland Railway Company as lessee of the property specifically readopting and reaffirming all stipulations and terms of the lease from the Raleigh Augusta Air Line Railroad Company and Petty, expressly providing that the defendant Randolph Cumberland Railway Company pay rent direct to the defendant Seaboard Air Line Railway Company, and should make no traffic arrangements or business connection with any other railroad company, except with the written consent of the Seaboard Air Line Railway Company, and that the latter may declare the term forfeited and reenter upon the property, and that the Randolph Cumberland Railway Company shall indemnify the Seaboard Air Line Railway Company against loss by reason of damage arising out of the operation of the road and return the property to the Seaboard Air Line Railway Company at the expiration of the term.
APPEAL BY THE PLAINTIFF.
This appeal presents for review the action of the judge in setting aside as a matter of law the verdict as to the second issue which *Page 288 
held the Seaboard Air Line Railway Company liable, and his instruction to the jury under which they found that the liability of the Seaboard Air Line Railway Company was secondary and entered judgment of nonsuit as to that company.
In these particulars there was error. This court has repeatedly held that the lessor and lessee of a railroad company are jointly liable for the torts of its lessee, and both defendants, the (271) Randolph Cumberland Railway Company and the Seaboard Air Line Railway Company are liable equally and in the same degree to the plaintiff.
In Aycock v. R. R., 89 N.C. 321, the Court held: "The defendant company leasing the use of its road or permitting the use of it by another company remains liable for the consequences of the mismanagement of the train in charge of the servants of the latter, and the injuries thence resulting to the same extent as if such mismanagement was the act or neglect of its own servants operating its own trains."
In a very full opinion the Court says in Logan v. R. R.,116 N.C. 947-948, that "the lessor company remains liable for the performance of its public duties to private parties for the nondelivery of goods received by it for delivery, and for all acts done by the lessee in the operation of the road, notwithstanding the lease is authorized by the lessor's charter. No matter how many leases and subleases may be made, the law attaches to the actual exercise of the privilege of carrying passengers and freight the compensatory obligation to the public to use ordinary care for the safety of both persons and property so transported. On the other hand, the carrier, who simply substitutes with the consent of the State another in his place, cannot establish his own right of exemption from responsibility for the wrongs of the substitute unless he can show, not only explicit authority to lease the property, but to rid itself of such responsibility."
In Harden v. R. R., 129 N.C. 362, in which case the authorities are collected and approved, the Court said: "If a railroad corporation could relieve itself of liability by leasing, it would follow that leases could be made to another corporation with no tangible assets — as, indeed, the lessee in this case, if a foreign corporation, has none in this State — leaving the travelers and shippers over its line, the general public and its employees alike, without recourse on the property of the corporation which was chartered to operate the road, and which is left in receipt of the rent, which might readily be made high enough to cover the profits. Thus the company would, by the devise of a lease, receive the profits without incurring the liabilities *Page 289 
of its business. Among the many cases to the same effect, besidesAycock v. R. R., supra, and Logan v. R. R., supra, and Harden v.R. R., supra, will be found Tillett v. R. R., 118 N.C. 1043; James v.R. R., 121 N.C. 528; Norton v. R. R., 122 N.C. 910; Kinney v. R.R., ib., 961; Benton v. R. R., ib., 1009; Pierce v. R. R., 124 N.C. 93;Perry v. R. R., 128 N.C. 471; S. c., 129 N.C. 333; Raleigh v. R. R.,ib., 265; Smith v. R. R., 130 N.C. 344; S. c., 131 N.C. 616; Brown v.R. R., ib., 455; Mabry v. R. R., 139 N.C. 388; Parker v. R. R.,150 N.C. 433; Zachary v. R. R., 156 N.C. 496; S. c., 232 U.S. 258, and there are many others since, among them Mitchell (272)v. Lumber Co., 176 N.C. 645; Hill v. R. R., 178 N.C. 607.
In this case the relationship of lessor and lessee is fully shown by the allegations in the complaint and the admissions in the answer, and the lease contract, as set out in the record in which there are all the elements of a lease, i. e., the creation of a lesser estate from the greater; the reservation of rent, the retention of some interest or estate after the termination of the term and the recognition by the terms of the lease of the ownership of the demised property by the lessor. A lease is distinguished from an assignment in that the latter is a conveyance which transfers the whole and entire estate. An assignment makes no reservation of rent and reserves no interest in the property assigned. In this case the term for which the property was demised is less than the term for which part of the property was acquired from the Carthage Railway Company, and the terms of the lease create the direct relationship of lessor and lessee, substituting the Randolph Cumberland Railway Company for the former lessee; the Seaboard Air Line Railway expressly retains absolute control over the operation of the road by the Randolph Cumberland Railway Company, its lessee, and the right and power to say with whom, how, when, or on what terms the Randolph Cumberland Railway Company may make traffic arrangements or business connections with any other railroad, thus securing to the lessor the benefit of operating the road, and protects the lessor against payment of taxes levied against the demised property and franchise rights, requiring the lessee to pay the same.
The lessor by its contract requires that the demised property shall be returned to it upon expiration of the terms specified, and that during the lease it shall be insured for its benefit, thus recognizing a present interest in the term. The lease demises the "rights, powers, privileges, easements and franchises" of the lessor who also reserves the right to declare a forfeiture of the term and make reentry and retake the property demised upon nonpayment of rent, *Page 290 
and the lessee agrees to indemnify the lessor against loss or damage arising out of the operation of the road by the lessee.
The cases relied upon by the defendant — Dunn v. R. R., 141 N.C. 521, and Gregg v. Wilmington, 155 N.C. 18 — differ radically as to the facts from the case at bar, and are not in point.
There being a lease, the court erred in charging the jury that the liability of the Seaboard Air Line Railway Company was secondary. The liability of lessor and lessee is joint and several, and in equal degree, and there was also error in setting aside the verdict as against the Seaboard Air Line Railway Company as a matter of law.
APPEAL BY DEFENDANTS.
(273) In view of what has just been said, the appeal of the two defendants as to the other exceptions should be considered jointly.
The defendants except to the evidence as to the physical condition of the plaintiff's intestate and the dying declarations made by him a short time before his death. The Legislature of 1919, amended C. S. 160, which authorizes recovery of damages for death caused by wrongful act, by adding to said section the following clause: "In all actions brought under this section the dying declarations of the deceased as to the cause of his death shall be admissible in evidence in like manner, and under the same rules, as dying declarations of deceased in criminal actions for homicide are now received in evidence."
This amending clause has been construed in Tatham v. Mfg. Co.,180 N.C. 627, in which the power of the Legislature to so enact was sustained in an opinion by Mr. Justice Hoke. The circumstances under which dying declarations are competent in criminal actions are set out fully in S.v. Mills, 91 N.C. 594, which has been repeatedly cited and approved since. See citations in Annotated Edition.
The entire dying declaration of plaintiff's intestate is as follows: "I am going to die. I am broken all to pieces. I want you to see to it that they pay you for this. I did not see the train. I did not know that it was anywheres near until my car was going over." The attendant circumstances were fully set out in evidence, and leave no question as to the death of the plaintiff's intestate being caused by the collision of the train with the car which he was driving. He died on the following day. That part of the declaration to which the defendants except, "I am broken all to pieces. I want you to see to it that they pay you for this," was competent as expressing the conviction of the deceased that he knew that death was rapidly *Page 291 
approaching, and that he had abandoned all hope, and as being also an integral part of the dying declaration.
It can make no difference that the act authorizing the admission of dying declarations in such action was passed after this occurrence. It is a general statute changing in rule of evidence, in which no one has a vested interest and which the law-making power can extend, alter or repeal at will.
The exceptions to the evidence showing the condition of the track and rails at the crossing at the time of the injury to plaintiff's intestate cannot be sustained. This evidence tended to show that the death was proximately caused by the want of care and the negligence on the part of the defendants, as alleged in the complaint, in failing to maintain at said public crossing some notice to warn the public and failure to remove the soil from the rails and track and to clear away and keep down the undergrowth and other obstructions which concealed from view the railroad track (274) at the point where it crossed the public highway; also failure to sound the whistle or ring the bell or give other suitable warning as the box car in front of said train was being pushed over the crossing at a point where its approach was obscured by the growth of trees and other obstructions, and by pushing the train of cars in front of the engine across the public highway in the town of Cameron, without giving warning, and when those in charge of said train could not see the danger to plaintiff's intestate and avoid injuring him.
The duty of the respective parties at a crossing have been so often stated by this Court that it would be supererogation to do more than give the summary of the rules governing such occasion as stated by the late Mr. Justice Allen in the recent case of Perry v. R. R., 180 N.C. 295: "If the view of the traveler is obstructed or his hearing an approaching train is prevented, and especially if this is done by the fault of the defendant and the company's servants' failure to warn him of its approach, and induced by this failure of duty which had lulled him into security, he attempts to cross the track and is injured, having used his faculties as best he could under the circumstances to ascertain if there is any danger ahead, negligence will not be imputed to him, but to the company, its failure to warn him being regarded as the proximate cause of any injury he received."
There was evidence fairly submitted to the jury to justify their finding this state of facts, and the charge is almost in the exact language of the Court in Perry v. R. R., which followed the previous *Page 292 
decisions in Goff v. R. R., 179 N.C. 216; Shepard v. R. R., 166 N.C. 544;Jenkins v. R. R., 155 N.C. 203; Hinkle v. R. R., 109 N.C. 472.
Upon examination of the entire case, the Court directs that the order striking out the verdict on the second issue must be reversed and the verdict on that issue reinstated; and judgment must be entered in favor of the plaintiff for the amount of the verdict against both defendants, jointly and severally, without any priority as to liability between then.
In appeal by plaintiff, error.
In appeal by defendants, no error.
ADAMS, J., not sitting.
Cited: Dellinger v. Bldg. Co., 187 N.C. 847; S. v. Franklin,192 N.C. 725; Barber v. R. R., 193 N.C. 695; S. v. Beal,199 N.C. 297.
(275)