**PENNY et v CINCINNATI ST. RY. CO.**

Common Pleas Court, Hamilton Co

Decided November 30, 1934

Nathaniel H. Maxwell and Fred G. Reiners, Cincinnati, for plaintiff.

John M. McCaslin, Cincinnati, for defendant.

## OPINION

By MATTHEWS, J.

This is an appeal from the finding of the Industrial Commission in favor of The Cincinnati Street Railway Company, a self-insurer under the provisions of the Workmen's Compensation Law, that the death of Jonas Pittman, an employee, did not result from an injury occasioned in the course of his employment.

A jury was waived. At the threshold of the trial the competency of certain evidence offered before and excluded by the commission is presented.

The claim is that Jonas Pittman, while employed by The Cincinnati Street Railway Co., suffered a hernia on June 24, 1929, caused by overstrain, and that this was a contributing or accelerating cause of his death which occurred on December 21, 1930. Attached to the record is a "First Notice of Injury and Application" dated December 15, 1930, six days before Pittman's death—signed by him by making his mark. According to the filing stamp this document was received by the commission on January 31, 1931, which was forty days after Pittman's death. This document is not signed by the employer. Accompanying this application was an "application for adjustment of claim", and also an affidavit by Jonas Pittman, sworn to before a notary public and executed by him by marking his "mark". This statement is also signed by four witnesses, one of whom is Charles F. McGrath whose name is followed in his handwriting by the description "field deputy Industrial Commission of Ohio"; and the evidence shows that he went for the purpose of securing the execution of these documents by direction of an officer of the Industrial Commission. This affidavit was made at a time when Mr. McGrath thought Jonas Pittman was in dying condition, but he could not and would not say that Jonas Pittman knew that such was his condition. While this affidavit and the other documents were stamped as having been received by the Commission on January 31, 1931, as a matter of fact Mr. McGrath took them to the commission on December 15, 1930, and apparently they have been in the posession of the commission continuously since then. There are in the record proferts of evidence of statements made by the decedent on the day it is claimed he was injured, and on the following and later days that he had hurt himself while at work carrying money boxes.

There is evidence proffered of the testimony of the family physician that on the next day the employee consulted him professionally and told him that he injured himself while at work.

On January 31, 1931, the widow filed an application naming herself and the daughter as defendants and making claim for compensation on account of the death of Jonas Pittman.

The commission having rejected the claim the widow filed an application for a rehearing on June 29, 1931. The claim was disallowed on rehearing on August 26, 1933. In the interval the widow had died, and there is a recital

in the record that the claim was being asserted by the daughter as the personal representative of the widow, but that the daughter had filed no application for a rehearing. The record does show that the daughter was appointed administratrix of her mother's estate.

(1) It is contended that the affidavit of Jonas Pittman is admissible as a dying declaration. Assuming that all the circumstances were present necessary to make a statement competent on that basis there still remains the question of whether or not this is tne appropriate action in which the doctrine applies. In Clark v Nebraska, 114 Neb. 818; 49 A. L. R. 1280, the court held as stated in the syllabus that:

"Dying declarations are admissible only in cases of homicide, and then only where tne death of the declarant is the subject of the charge."

In the annotation in 49 A. L. R., at 1287 it is said that:

"In all but two jurisdictions, Kansas and North Carolina, dying declarations have been held inadmissible in civil actions."

The annotator cites and quotes from decisions of courts of at least twenty states adhering to the rule of inadmissibility in civil actions. Among these cases is **Cosgrove v Schafer, 15 Bull. 8,** which is a decision of the Superior Court of Cincinnati in general term. The opinion was written by Judge Harmon and concurred in by Judges Force and Peck. The court held, as stated in the syllabus, that:

"In an action under the statute for wrongfully causing death, dying declarations of the deceased are not admissible, although defendant admits killing the deceased, and the evidence tends to show facts sufficient to justify a charge of homicide."

The law of Ohio seems to be settled that dying declarations as such are only admissible in criminal cases in which the charge is homicide. This was decided in **State v Harper, 35 Oh St 78,** the syllabus of which is:

"1. The general rule of evidence is, that dying declarations are admissible only when the death of the declarant is the subject of the charge, and the circumstances of the death are the subject of the dying declarations.

"2. Upon an indictment for unlawfully using an instrument upon the person of a woman, with intent to destroy a vitalized embroyo, in consequence of which she died, her dying declarations are inadmissible."

In the absence of legislation Kansas is the only state in which dying declarations as such are admissible in civil actions. North Carolina by legislative enactment has made them admissible, (Tatham v Andrews Mfg. Co., 180 N. C. 627; Williams v Randolph Co., 182 N. C. 267) and the Oregon statute as construed by its court has done likewise. (McCredie v Commercial Casualty Ins. Co., 142 Oregon 229, 91 A. L. R. 557). For a statement of the rule and list of cases see Jones on Evidence (3d Ed.) Sec. 332.

It is the duty of the court to apply the law. Any change of established law should be by legislative enactment. The court therefore holds that the affidavit is inadmissible as a dying declaration.

(2) Are statements made by Pittman on the day of his return home from work and on subsequent days to the members of his family, and to his physician and friends, admissible to prove that he was ruptured while at work? It seems to me that this question must be answered in the negative on the authority of **Weaver v Industrial Commission, 125 Oh St 465,** and **Coutellier v Same, 126 Oh St 546.** The syllabus of the latter case covers all phases of the question. The first paragraph of the syllabus is:

"Upon the trial of a workmen's compensation case, where the cause of death is an essential issue required to be proven, declarations of a decedent made to his physician or others, narrating the cause which is claimed to have contributed to his death, are self-serving and inadmissible, unless they

are made under such circumstances as to cause them to be a part of the res gestae. (**Weaver v Industrial Commission, 125 Oh St 465,** approved and followed.)"

In view of these recent decisions in "Industrial Commission" cases, it seems to me unnecessary to consider the applicability of Dabbert v Insurance Co., 2 Cinti. Sup. Ct. 98. If the case were identical with the instant case it would needs yield to the later and more authoritative pronouncements of our Supreme Court.

(3) This brings us to the question of the admissibility of the report of injury and applications.

This is also answered in the negative by Coutellier v Ind. Comm., supra, the second paragraph of the syllabus of which is as follows:

"A report or application blank furnished by the Industrial Commission, which the commission requires to be filled out and signed by the applicant, his physician and employer, is admissible evidence. But a certificate, signed by the employer, attesting the truth of the statements or declarations of the applicant pertaining to the cause of the injury, has no evidentiary value if it be proven that the certificate was based solely upon self-serving declarations contained in the application; and the jury should be instructed to ignore the certificate of the employer, if such a situation is developed on the trial."

It will be observed that the application was not signed by the employer and the statement of the attending physician contains no statement as to the cause of the injury. There is missing, therefore, the elements necessary to competency that were present in the Coutellier case. As was said in that case the self-serving declarations of the applicant are clearly incompetent, and, when the employer's statements are shown to have been based entirely on such self-serving declarations without personal knowledge they are equally incompetent and of no evidentiary value. Had the attending physician assumed to state the cause of injury it would have had no evidentiary value in the light of his testimony showing that his knowledge was gained exclusively from the statements of Pittman.

This brings up to a consideration of the competent evidence. Undoubtedly there is evidence that the decedent suffered from which it can be inferred that this developed in June, 1929, during his employment by The Cincinnati Street Railway Company. Is there evidence that this rupture was "occasioned in the course of his employment" by that company? Certainly there is no direct evidence to that effect. Is there circumstantial evidence?

The evidence shows that Jonas Pittman was over seventy years old when he died, had been employed by the defendant as an operator of street cars, that in 1926 he was injured in a collision between a street car and a truck, that from that time he suffered from hardening of the arteries and high blood pressure, and because he was unable to perform his duties as street car operator any longer, he was given employment as janitor in and about the defendant's office soon as he had recovered sufficiently, that the money was brought in from the cars in boxes, but that it was not a part of his regular duties to handle these boxes. However, on as least one occasion he was seen handling these boxes and was told that it was no part of his "job". At no time after 1926 was Jonas Pittman in good health. There is evidence that from June, 1929, he declined more rapidly, although he continued to work until October, 1930. During that time he made no report of any accident to his employer. He resided some distance from the place where he worked and walked to and from street cars upon which he rode in going to and returning from his work.

The certificate of death states the cause of death as "chronic myocarditis" and the contributory cause as "arterio sclerosis."

Do the circumstances tend to prove that Jonas Pittman was ruptured by lifting money boxes on the premises of

the defendant while he was there engaged in doing work for his employer? Certainly to justify such an inference the circumstances must tend to exclude the thought of an injury received elsewhere and point to the work of the employer as the active cause of the injury. Something must be found in the evidence that can serve as a premise for that conclusion. When we look to the evidence we find that when Jonas Pittman first disclosed that he was ruptured he was not on or near the premises of the employer or engaged in its work but was at home. Even if he had been on the employer's premises, or engaged in its work, some evidence of a causal connection between the rupture and the employment would have been necessary.

In **Grabler Mfg. Co. v Wrobel, 125 Oh St 265**, the employee died on the employer's premises during working hours. The coroner found the cause of death to have been "acute dilation of the right ventricle. General arterio sclerosis, including the coronary arteries. Moderate chronic diffuse nephritis. Edema and congestion of the lungs and brain." There was evidence that one workman was absent and the theory advanced by the claimant was that the death had been caused or accelerated by some unusual exertion arising from the necessity of extra work due to the absence of this fellow workman. The court rejected the theory saying at page 268 that:

"The trial court would not have been warranted in submitting the case to the jury upon the theory that from the single fact that a workman was absent an inference could be drawn that Wrobel volunteered to do additional work and the inference therefrom that he had in fact done any additional work prior to his physical collapse, or that, if had, it was of such character as to require additional exertion and that such additional exertion had a real causal relation to his death. There was no evidence that any injury had in fact been occasioned to Wrobel in the course of his employment."

See also **Industrial Commission v Davis, 119 Oh St 221**.

The British Workmen's Compensation Act is similar to our law in that it requires as a condition to compensation that the injury or death should occur not only in the course of, but also arise out of the employment.

In Fisner v London Midland & Scottish Ry. Co., 24 B. W. C. cases, The House of Lords considered a case in which death occurred in the course of employment without any evidence of the immediate circumstances. The court laid down this rule at pages 26 and 27:

"Now, my Lords, from these passages to which I have referred I think this rule may be deduced for application to that class of case which may be called unexplained accident cases, namely, that where the evidence establishes that in the course of his employment the workman was properly in a place to which some risk particular thereto attaches and an accident occurs capable of explanation solely by reference to that risk, it is legitimate, notwithstanding the absence of evidence as to the immediate circumstances of the accident. to attribute the accident to that risk and to hold that the accident arose out of the employment, but the inference as to the origin of the accident may be displaced by evidence tending to show that the accident was due to some action of the workman outside the scope of the employment."

See also Rosen v Owners of S. S. Quercus, 26 B. W. C. C. 286.

Now these were cases of death admittedly occurring in the course of the employment. Notwithstanding that, all the cases (these and all others of which I know) required some evidence from which an inference could be drawn that the death **arose out of** the employment. The case at bar is weaker because there is no evidence that this rupture occurred in the course of the employment. The case seems to me to bear no resemblance to the case of **Cook v Industrial Commission, 32 N. P. (N.S.) 83**. In that case the first appearance of the injury

was while the employee was on the employer's premises at his work. The injury was the kind naturally resulting from a particular hazard of his employment, and there was no evidence of exposure to a similar hazard elsewhere.

In the case at bar it cannot be said that there was anything in the employment constituting a particular hazard to rupture, nor that the employee was not equally exposed elsewhere. Hernia may result from trauma anywhere, at any time, and there is exposure to it at all times and places. Furthermore it may develop without any known trauma, and in fact as a result of gradual weakening of the parts. That is common knowledge. To conclude that a hernia sustained by overstrain while engaged in the work of his employer caused or contributed to the death of Jonas Pittman can only be done by piling inference upon inference in violation of the rule prohibiting recourse to such a process in judicial reasoning. **Sablovitz v The Lubric Oil Co., 107 Oh St 204.** In my judgment, at best, it would be substituting conjecture and suspicion for sound conclusion from a valid evidential premise.

So on the whole record the court finds that the claimant has failed to sustain the burden of proving that the death of Jonas Pittman occurred in the course of, and arose out of his employment by the defendant, and, therefore, finds for the defendant.