LAMBORN & COMPANY v. HOLLINGSWORTH & HATCH.

(Filed 21 March, 1928.)

**1. Trial—Arguments and Conduct of Counsel—Unwarranted Abuse of Other Party.**

It is within the sound discretion of the trial judge, not reviewable on appeal unless grossly abused, either upon motion made, or *ex mero motu* to prevent an attorney for a party litigant in his argument to the jury from exceeding his privilege in drawing unreasonable inferences, and thus unwarrantably abuse the other party, or his witnesses.

**2. Contracts—Measure of Damages in Action for Breach—Resale and Mode of Resale.**

Where the wholesale purchaser of sugar has breached his contract to receive barrel lots at his contract price, the seller, in his action thereon is entitled to recover the difference between the price so fixed and the fair market value, when a less amount, upon a resale after giving the purchaser sufficient notice of his intention to do so, which is disregarded.

CIVIL ACTION, before *Grady, J.,* at August Term, 1927, of CHATHAM.

On 4 June, 1920, the plaintiff, Lamborn & Co., sold.to the defendants by written contract "75 barrels standard fine granulated sugar on the basis of 26 cents per pound f. o. b., Savannah Refinery, Port Wentworth, Ga., for fine granulated, shipments to be made as follows: One-third during June or July; one-third during August or September; one-third during September or October, if possible. Shipment at seller's option during period specified, subject to delay, if any."

This contract was signed by the defendant at Sanford, N. C., and forwarded to plaintiff at Savannah, Ga., by mail. The letter forwarding the contract stated: "You will find enclosed signed contract for 75 barrels of Standard Fine Granulated Sugar," etc. On 24 June, 1920, plaintiff shipped to the defendants 24 barrels of sugar. This shipment of 24 barrels was accepted by the defendant without objection and paid for. On 7 August, 1920, plaintiff shipped to the defendant 25 barrels of sugar, which was accepted without objection and paid for. On 9 October, 1920, the plaintiff shipped to the defendant 26 barrels of sugar. In the meantime the price of sugar had greatly declined. The defendant refused to accept the 26 barrels, contending that the shipment contained one barrel too many for that the allocation under the contract for September or October shipment was one-third of the total or twenty-five barrels. The plaintiff contended that the 26 barrels was the amount necessary to complete the contract, and that under the agreement the defendant had purchased 75 barrels of sugar and that shipment was at seller's option. The defendants refused to accept the sugar unless the plaintiff would deduct the price of one barrel. Thereupon the plaintiff notified the defendants that it would resell said sugar and charge the defendants with the difference. On 28 October the plaintiff notified the defendants that it had received an offer of 11 cents for said sugar, and that said offer was the best that could be obtained, and that unless defendants should furnish a better offer by 10 a.m., 29 October, 1920, they would sell the sugar at the price offered and hold the defendants liable for the difference between the contract price and the price obtained on resale, together with such other losses and expenses as the plaintiff would sustain by reason of the breach of contract. The defendants did not reply to this communication, and on 30 October, 1920, plaintiff sold the

sugar to one Bobbitt in Sanford at a loss of $1,428.56. Included in this total loss were certain small items of expense for storage and telegrams, amounting to $46.11. All the evidence tended to show that the price of the sugar upon the resale to Bobbitt was the fair market value of sugar on the date of resale. The plaintiff made demand upon the defendants for the sum of $1,428.56, and upon refusal to pay, suit was instituted. There was a verdict for $1,428.56 in favor of plaintiff, and from judgment upon the verdict the defendants appealed.

*Biggs & Broughton for plaintiff.*
*Seawell & McPherson and Williams & Williams for defendants.*

BROGDEN, J. The record discloses: during the course of argument of counsel for defendants to the jury, counsel characterized the conduct of the plaintiff as being actuated by "avarice and greed," and referred to the contract as "unconscionable and oppressive," with other comments of like tenor. The court being of the opinion that neither the allegations in the answer nor proof offered in the case supported such argument, interrupted counsel with the statement that "the argument you are now making has nothing to do with the case."

The defendants excepted.

At the conclusion of all the argument, counsel for defendant handed up "what purported to be a statement of the argument he was making or purporting to make when interrupted by the court." The court thereupon stated to counsel that he could read the statement to the jury or proceed to make his argument to the jury as he had intended. Counsel declined to do either. Defendants excepted.

Under our law it is the undoubted right of counsel to argue every phase of the case supported by the evidence without fear or favor, and to deduce from the evidence offered all reasonable inferences which may flow therefrom. The testimony and conduct of witnesses and parties must at all times be subject to such criticism and attack as the circumstances reasonably justify. However, the baiting and badgering of witnesses and parties ought not to be permitted by the court. Parties come into court, as they have a right to do, to have controversies determined according to the orderly processes of the law, and witnesses are compelled to come to court whether they desire to do so or not. At all events, as long as they demean themselves in a courteous manner they are entitled to the same courtesy in the courthouse as would be accorded to a citizen in any other business transaction.

The general principle, established by many authorities, is to the effect that the comment of counsel upon the testimony and conduct of parties and witnesses "must be left, ordinarily, to the sound discretion of the

judge who tries the case; and this Court will not review his discretion, unless it is apparent that the impropriety of counsel was gross and well calculated to prejudice the jury." *Jenkins v. Ore Co.*, 65 N. C., 563; *S. v. Tyson,* 133 N. C., 698; *S. v. Davenport,* 156 N. C., 597; *Maney v. Greenwood,* 182 N. C., 579. Thus in *Massey v. Alston,* 173 N. C., 215, *Walker, J.,* delivering the opinion declared: "A party, or witness, should not be subjected unjustly to abuse, which is calculated to degrade him or to bring him into ridicule or contempt, and when this occurs he is clearly entitled to the protection of the court, when he asks for it in proper time, and sometimes, perhaps, when he does not, for the court should extend it voluntarily, in the exercise of its judgment and, if necessary, in order that the trial may proceed fairly and impartially and lead to a just result."

Also in *McLaurin v. Williams,* 175 N. C., 292, counsel, in the course of argument to the jury, was interrupted by the trial judge, who declared that he could not permit counsel to continue the line of argument he was then pursuing. This Court, in upholding the action of the trial judge, declared: "There was neither allegation nor issue presenting such proposition." The trial judge "is not a mere moderator, the chairman of a meeting, but the judge appointed by the law to so control the trial and direct the course of justice that no harm can come to either party," etc. *S. v. Davenport,* 156 N. C., 612.

There is nothing in the present record which indicates an abuse of that sound legal discretion committed by law to trial judges.

The contract between the parties was in writing and provided for the sale of 75 barrels of sugar, and was an entire contract for that number of barrels. The division of shipment into three portions of 25 barrels each, under the terms of the contract, was at the seller's option, and the defendants, upon receiving 24 barrels in June, made no protest that the shipment was one barrel short. By the same token they were in no position to protest when the price had declined, because the shipment was one barrel long, because it was the plain duty of the plaintiff under the contract to deliver to the defendant 75 barrels of sugar, and the plaintiffs undertook to deliver no more than that amount.

The court instructed the jury to answer the issue as to the breach of contract in the affirmative. This instruction was correct upon all facts and circumstances disclosed by the record.

Upon the second issue of damages the court charged the jury as follows: "I charge you that if you find the facts to be as testified to by all the witnesses who have come on the stand and testified, that is, if you believe these witnesses, if you believe that the plaintiff sold that sugar as testified to here, and after notifying the defendants of sale, and of the amount of the sale, and that the defendants paid no attention to it,

and you find the facts so to be, it would be your duty to answer the issue $1,428.56." This instruction is sustained. If the defendants wrongfully refused to accept the sugar, the plaintiff had the right to resell it as agent of the defendants and to recover from them the difference between the contract price and that obtained on the resale, if the resale was made within a reasonable time, fairly conducted, with full notice and consummated in the exercise of utmost good faith. *Grist v. Williams,* 111 N. C., 53; *Heiser v. Mears,* 120 N. C., 443; *Clothing Co. v. Stadiem,* 149 N. C., 6; *Flour Mills v. Distributing Co.,* 171 N. C., 708.

The undisputed evidence disclosed that notice was duly given by the plaintiff to defendants, and that the sugar brought the market price at the resale.