LONNIE G. CONN v. SEABOARD AIR LINE RAILWAY COMPANY AND C. A. RICE.

(Filed 27 June, 1931.)

**Trial C a—Counsel may not read dissenting opinion in argument to jury over objection of adverse party.**

It is not permissible for counsel, in his argument to the jury, to read a dissenting opinion by a Justice of the Supreme Court as the law of the case over the defendant's objection, and where this has been done a new trial will be awarded on the defendant's exception thereto, and the fact that the trial court, upon objection, made a general observation to the effect that the jury would take the law from the court and not from counsel is insufficient, it being his duty, upon objection duly made, either to direct counsel not to read the dissenting opinion or to plainly and

unequivocally instruct that the dissenting opinion had no legal bearing upon the case. C. S., 203. Limitations on counsel in their argument to the jury discussed by BROGDEN, J.

STACY, C. J., concurring.

CLARKSON, J., dissenting.

CONNOR, J., concurs in dissenting opinion.

CIVIL ACTION, before *Sinclair, J.,* at October Term, 1930, of VANCE.

This was an action instituted by the plaintiff against the defendant to recover damages for personal injuries sustained 3 April, 1930, at a crossing in the town of Henderson. The defendant denied the allegations of negligence, pleaded contributory negligence and other defenses not pertinent to a decision of this case.

Issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of plaintiff. The verdict awarded $7,000 damages for personal injuries and $250 for property damage.

From judgment upon the verdict the defendant appealed.

*M. C. Pearce, D. P. McDuffie, C. A. Douglass and Thomas W. Ruffin for plaintiff.*

*Murray Allen and Pittman, Bridgers & Hicks for defendant.*

BROGDEN, J. The record shows the following: During the argument of one of the counsel for plaintiff to the jury, he made the following statement:

"The law in North Carolina says that all Mr. Conn had to do when he approached the track was to stop, if the circumstances were such that an ordinarily prudent man would stop, look and listen, and then go ahead as he did in this case." "The North Carolina Supreme Court in the case of *Kimbrough v. R. R.,* 180 N. C., 274, and decided in the year 1920, turned the defendant's theory down flat. I want to read here what *Judge Clark* said about the law. *Judge Clark* was a great *Chief Justice* of the Supreme Court and one who upheld the liberties of the people."

Objection by defendant to plaintiff's attorney reading from the opinion of *Judge Clark.* The court then charged the jury: "The jury will take the law from the court and not from counsel."

Counsel for defendant: "We note an exception to the reading of the dissenting opinion of *Judge Clark.*"

Objection by defendant; overruled; defendant excepts.

"Talking about going out upon the track, he said: 'Gessler placed his hat upon a pole and compelled the public to pay obeisance to it. But neither of these are more repugnant to our sense of propriety and right

than to require the people traveling their own roads to come to a full stop at the sight of two parallel bars of iron laid across a public highway, simply because the railroads, while saving themselves the expense of avoiding grade crossings, are unwilling to take the trouble or responsibility to give proper signals or to establish gates and custodians whenever needed.' " This is *Judge Clark's* language on it. I don't care how much the attorney for the railroad objects to it. It is my opinion that the Supreme Court of North Carolina in the case of *Moseley v. R. R.,* 197 N. C., 628, has backed *Judge Clark* up in his statement that it is not your duty to stretch your necks and bow to two iron rails. That is what you say the law is," etc.

The foregoing excerpt from the record presents for decision this question of law:

In arguing a case to the jury, is it permissible for an attorney to read to the jury a dissenting opinion of one of the Justices of the Supreme Court of North Carolina?

Doubtless, it should be observed at the outset that a general dissertation or essay upon dissenting opinions is not pertinent to a solution of the question of law involved in this appeal. Suffice it to say that such opinions constitute valuable and helpful interpretation of the law as expounded or present in clear relief the divergent paths of legalistic thought upon a given subject. Moreover, at times, they may serve to demonstrate that courts and judges do not always fall into the goose-step of outworn precedent.

Prior to 27 December, 1844, an attorney was not permitted to argue law to a jury. In *S. v. Miller,* 75 N. C., 73, *Justice Reade* said: "Some twenty-five years ago a circuit judge restrained a lawyer from arguing the law to the jury, suggesting that the argument of law ought to be addressed to the court, as the jury had to take the law from the court. Umbrage was taken at that, and the Legislature passed an act allowing counsel to argue both the law and the facts to the jury." The act referred to is chapter 13, Public Laws of 1844, and is now embodied in C. S., 203, which provides that "in jury trials the whole case as well of law as of fact may be argued to the jury." This declaration is broad and comprehensive and easily lent itself to a construction by the profession that the field of a jury argument was unlimited and boundless. Hence, in the course of time, it became necessary for courts to fence in the field by imposing certain restrictions upon counsel in presenting causes to the jury. These restrictions are reflected in certain legal inhibitions imposed by the courts. These inhibitions may be grouped and classified as follows:

1. Attorneys are not permitted, except in certain specific instances, to read medical books or writings of a scientific nature to the jury.

*Melvin v. Easley,* 46 N. C., 386; *Huffman v. Click,* 77 N. C., 55; *S. v. Rogers,* 112 N. C., 874; *Butler v. R. R.,* 130 N. C., 16; *Lynch v. Mfg. Co.,* 167 N. C., 98; *Tilghman v. R. R.,* 171 N. C., 652. Nor can counsel read a paper-writing not in evidence for the purpose of impeachment. *S. v. Bryan,* 89 N. C., 531. The theory which excludes the reading of such publications, is based upon the idea that declarations in a book or opinions of experts contained therein, are not under oath, and hence cannot be classified as evidence. The exception to the general rule is pointed out in the *Tilghman case, supra,* in these words: "When an expert has given an opinion and cited a treatise as his authority, the book cited may be offered in evidence by the adverse party as impeaching testimony. But unless the book is referred to on cross-examination it cannot be used for this purpose. It would be a mere evasion of the general rule under discussion if counsel were allowed on cross-examination to read to the witness portions of such works, and to ask if he concurred in or differed from the opinion there expressed; hence this is not allowed."

2. The second class of restrictions may be denominated as unfair comment and is discussed in many decisions, notably: *Jenkins v. Ore Co.,* 65 N. C., 563; *S. v. Williams,* 65 N. C., 505; *Coble v. Coble,* 79 N. C., 589; *S. v. Davenport,* 156 N. C., 596; *S. v. Tucker,* 190 N. C., 708; *Lamborn v. Hollingsworth,* 195 N. C., 350; *S. v. Green,* 197 N. C., 624; *S. v. Beal,* 199 N. C., 278. These illustrations of unfair comment, beginning with the familiar "poor widow and rich corporation" argument, running through the "Pennsylvania Yankee" appeal, including the famous upas tree declaration and ending with the religious and social theories referred to in the *Beal case,* all stand as a lasting monument to vituperative ingenuity. The climax of unfair comment in the literature of the law of this State was reached in the argument of counsel and the charge of the court in *S. v. Brown,* 67 N. C., 435.

The third class of inhibitions denies to counsel the right to read the decisions of the Supreme Court of North Carolina where such reading would reasonably tend to prejudice either party upon the facts. *S. v. Corpening,* 157 N. C., 621; *Forbes v. Harrison,* 181 N. C., 461; *Elliott v. Power Co.,* 190 N. C., 62. Thus, in the *Corpening case,* the Court said: "As we understand the record, the counsel for the prosecution read the facts in *Malonee's case,* relied upon as supporting evidence to the prosecutrix, and over defendant's objection was allowed by the court to say in effect that a jury of Jackson County had convicted Malonee, and the supporting evidence was much stronger "than in *Malonee's case,*" etc. A new trial was awarded because the trial judge permitted such argument to be made. In the *Forbes case* counsel attempted to read a portion of the opinion in *Bell v. Harrison,* 179 N. C., 190, and

upon objection by counsel for defendant the court declined to permit such reading, and this ruling was upheld. The Court observed "that two cases grew out of said administration and there was grave danger of prejudicing the defendants upon the facts as counsel was allowed to read the part of the opinion in the case proposed to be read by him."

4. The fourth class of restrictions denies to counsel the right to comment upon extraneous matters upon which there is no evidence. *McLamb, Admr., v. R. R.,* 122 N. C., 862; *Hopkins v. Hopkins,* 132 N. C., 25; *S. v. Love,* 187 N. C., 32.

5. The fifth class of restrictions excludes personal experience of counsel as part of the argument. *Perry v. R. R.,* 128 N. C., 471.

The courts of other jurisdictions have considered the question as to what may be read to a jury by counsel in the course of argument.

6. The Court of Appeals of New York granted a new trial in the case of *Williams v. Brooklyn Elevated R. R. Co.,* 26 N. E., 1048, because counsel, in the course of the argument, was permitted, over objection, to read to the jury an article appearing in the New York *Tribune,* entitled "Only a Boy Peddler." The article purported to be an account of the death of a little boy who was selling collar buttons and combs to help support his mother and eight brothers and sisters, and his death was caused by contact with a live wire swinging from a pole. The Court said: "The reading by counsel in summing up to the jury of the newspaper article 'Only a Boy Peddler' was wholly irrelevant to the case. It could have been read for no purpose except to inflame the jury against corporations, and to lead them, under the influence of a just anger excited by the incident narrated, to give liberal damages to the plaintiff in the case on trial. The refusal of the court to interfere, under the circumstances of this case, was legal error. The privilege of counsel, and the largest liberality in construing it, did not authorize such a totally irrevelant and prejudicial proceeding."

Again in *People v. Fielding,* 53 N. E., 497, the defendant was indicted for auditing a fraudulent claim against the city of Brooklyn. The District Attorney, in the course of his argument, referring to taxpayers, said: "I say you will see old men in that line clutching in their knotted fingers rolls of dirty one-dollar bills. Look at their worn and shabby garments. Look at the marks of painful labor written all over their aged and clumsy limbs. It is the money of these people which the defendant has stolen and squandered. These are the people whose cause I plead. These are the victims of the defendant's crime. These are the people who now, by tens of thousands, are waiting outside for your verdict. Will you do them justice, or will you not? If you shall let this man, loaded with his guilty plunder, escape, then I say you have committed the unpardonable sin." The court, in charging the jury,

6—201

said: "Some things have been said about the newspapers, about popular clamor, and about the burden of the taxpayers. Those are considerations which are not to control or influence you in deciding this case." The Court awarded a new trial, and in the course of the opinion it is said: "Even in a civil action, when counsel are permitted, under objection and exception, while summing up, to read to the jury an abstract from a pamphlet or newspaper, or to exhibit a cartoon, not in evidence, it is good ground for reversal. ·. . . So statements made by counsel, outside of the evidence, and subject to objection, which strongly tend to arouse sympathy, prejudice, or resentment in the minds of the jury, require a new trial, even if the court charges that they have nothing to do with the case, and must be disregarded." See, also, *Scripps v. Reilly,* 38 Mich., 10.

7. Eulogies of deceased in suit for wrongful death. *Dixon v. Haynes,* 262 Pac., 119. The Court of Washington said: "The misconduct of counsel complained of consists of an attempt by one of the counsel for respondent to read something to the jury which had not been introduced in evidence, appearing to be a eulogy of deceased, or something of the kind. Upon objection, the court refused to allow counsel to read it, and counsel for respondent was peremptorily directed to refrain from making any reference to any document not in evidence. Although counsel for respondent should not have attempted to read anything to the jury which had not been introduced in evidence on the trial, the court fully protected the rights of appellants, so that no prejudicial error occurred."

8. Counsel are not permitted to read to the jury, as law, decisions which are inapplicable to the facts, or which do not declare the law as held by the jurisdiction in which the trial occurs. This principle was announced by the Supreme Court of South Carolina in *Key v. Carolina & N. W. Ry. Co.,* 147 S. E., 625. The Court said: "It appears from the record that the presiding judge permitted appellant's counsel to read the entire decision of the United States Supreme Court in the *Goodman case* to the jury in the trial of the case at bar, but that the court refused to charge the law of that case, and on motion for a new trial failed to grant the same because the jury had disregarded the principles announced in the *Goodman case.* . . . Lately, it has been cited often by counsel for railroad companies in this Court, and it has received considerable attention in dissenting opinions. A majority of the Court has never indorsed the views of that case. The only mistake made by the presiding judge in this connection was in permitting counsel for the appellant to read the decision in the *Goodman case* to the jury." *Union Pac. R. R. Co. v. Field,* 137 Fed., 14; *Ray v. Chesapeake & Ohio R. R. Co:,* 50 S. E., 413; *Farnandis v. Great Northern R. R. Co.,* 84 Pac., 18.

CONN *v.* R. R.

This Court expresses no approval or disapproval of the various principles announced in other jurisdictions upon the subject, but such decisions are referred to in order to demonstrate the trend of judicial thinking. The range of a jury argument is carefully and correctly set forth by McIntosh North Carolina Practice and Procedure, sec. 569, *et seq.* Summarizing the principles of legitimate argument by counsel, the author says: "But he may refer to well-known facts in history, literature, and science by way of illustration and ornament. He may argue matters of common knowledge, or matters of which the court will take judicial notice, and within the limits of the evidence the manner of presenting the case is left to his own judgment. He may indulge in impassioned bursts of oratory, or what he may consider oratory, so long as he introduces no facts not disclosed by the evidence. It is not impassioned oratory which the law condemns and discredits in the advocate, but the introduction of facts not disclosed by the evidence. It has been held that he may even shed tears during his argument, the only limitation on this right being that they must not be indulged in to such excess as to impede or delay the business of the court."

Applying the principles deduced from the authorities, it is clear that a dissenting opinion is not admissible in evidence, and hence cannot be classified as a fact. Neither is it the law of the particular case, else it would not be a dissenting opinion. Manifestly, a dissenting opinion expresses the individual view of the judge who writes it, and thus would logically fall into the classification of newspaper editorials, magazine articles, pamphlets, or other writings, which have not received the judicial sanction of a court. Therefore, the Court concludes that it is not permissible, upon objection duly made and entered, for an attorney to read as the law of the case a dissenting opinion of one or more of the Justices of the Supreme Court.

A perusal of the record discloses, beyond a doubt, that the dissenting opinion in the *Kimbrough* case was read to the jury as a correct statement of the law. The trial judge, upon objection, made a general observation to the jury, but this was not sufficient. It was his duty, upon objection duly made, either to direct counsel to refrain from such reading or instruct the jury plainly and unequivocally that the dissenting opinion had no legal bearing upon the case.

New trial.

STACY, C. J., concurring: A verdict, or *veredictum* as it was called in the old English law, is, as indicated by the derivation of the word, the *dictum* of truth. It is the finding of a jury, or the accord of the twelve, as distinguished from the decision of a court, a referee, or a commissioner.

CONN *v.* R. R.

Verdicts are to be rendered on evidence pertinent to the issues, and not on extraneous matters. Animadversions or conclusions of others, therefore, based on different fact situations, whether found in legal opinions or elsewhere, are neither relevant nor competent, as they tend to mislead rather than to aid in reaching the correct determination of a particular case. And exact justice is the goal of every judicial inquiry.

Not only is the establishment of justice the goal of every judicial inquiry, but, in a sense, it may rightly be denominated the end of all government, if not the end of all civil society. It has ever been and ever will be pursued by men until it is attained, or until liberty is lost in the pursuit. Justice is not an abstraction, nor yet an ethereal, intangible something, but rather an act of the mind, a positive resolution and the will to see that every man shall have his due. The quality of right or wrong is not a physical manifestation, but it is the attribute of a mental concept produced by external stimuli. No act acquires color or meaning-content until it is brought in judgment, and the correctness of every judgment depends upon its own approximation or nearness to the truth.

Here, the rightness or the wrongness of the conduct of the parties is not in the street-crossing, nor in the collision of the automobile with the engine, nor yet in the actions of the plaintiff and the engineer, but it is to be found first in the minds of the witnesses, next in the verdict of the jury, and finally in the judgment of the court. There can be no conclusion of right or wrong where there is no mental determination. This is the result of an intellectual process, the mind's characterization or classification of phenomena. The character of an act is determined first by the category to which it is assigned in the mind of the listener or the observer and finally by the settled judgment of the community. Thus an act pronounced good or lawful today may be declared bad or unlawful tomorrow, and *vice versa,* by reason of a change in the standard of judgment. It is only by the refining process of growth that we are able to approach, if not reach, the ideal of absolute justice—a consummation devoutly to be wished, if happily we may find it.

A's conduct is approved or condemned by B according to B's conception of right, and B's conduct is approved or condemned by A according to A's estimate of right, the correctness of the judgment in each case depending, in its final analysis, upon the correctness of the standard by which it is made. As thus understood, justice is universal in its application, and it likewise imposes an universal obligation. It is as much a duty to see that justice is rendered to others as it is to demand it for one's self, and to fail in either is a questionable act. The character of the conduct of a man as he walks along the street is to be judged, in the

first instance at least, by those who observe his conduct in the street. In a very real sense, therefore, every man is his brother's keeper and is in duty bound to him according to the precepts of the golden rule. This is the basis of the injunction: "Ye shall do no unrighteousness in judgment; thou shalt not respect the person of the poor, nor honor the person of the mighty: but in righteousness shalt thou judge thy neighbour." Lev. 19 :15. Out of the theory that the binding estimate of the community or "law is the highest expression obtainable, at any given time, of the people's conception of the correct rule of conduct," rules of evidence have been evolved, all having as their one aim the discovery of truth, upon which just judgments may be rendered.

As the matter complained of was extraneous to the inquiry and was calculated to hurt rather than to help appellant's cause, it should have been excluded. The conclusions reached by the writer of the dissenting opinion, which counsel read to the jury, grew out of a different fact situation from the one here disclosed; and, as said by *Marshall, C. J.*, in *U. S. v. Burr*, 4 Cr., 470, "Every opinion, to be correctly understood, ought to be considered with a view to the case in which it was delivered." Furthermore, the opinion read was not the law of that case, nor of this one. That part of C. S., 203, therefore, which provides, "In jury trials the whole case as well of law as of fact may be argued to the jury," is not applicable to the instant facts.

CLARKSON, J., dissenting: C. S., 203, in part: "In jury trials the whole case as well of law as of fact may be argued to the jury."

The record, quoting *all of it* upon which a new trial is awarded, is as follows: "During the argument of Thos. W. Ruffin, of counsel for plaintiff, to the jury, he made the following statement: 'The law of North Carolina says that all that Mr. Conn had to do when he approached that track was to stop, if the circumstances were such that an ordinarily prudent man would stop, look and listen, and then go ahead, as he did in this case.' The North Carolina Supreme Court in the case of *Kimbrough v. R. R.*, reported in 180 N. C., at p. 274, and decided in the year 1920, turned Mr. Allen's (speaking of defendant's attorney) theory down flat. I want to read here what *Judge Clark* said about the law. *Judge Clark* was the great *Chief Justice* of the Supreme Court and one who upheld the liberties of the people. (Objection by defendant to plaintiff's attorney reading from opinion of *Judge Clark.*) The court then charged, 'The jury will take the law from the court, and not from counsel.' Counsel for defendant: We note an exception from the reading of the dissenting opinion of *Judge Clark*. Objection by defendant; overruled; defendant excepts. Talking about going out upon the track

he said: 'Gessler placed his hat upon a pole and compelled the public to pay obeisance to it. But neither of these are more repugnant to our sense of propriety and right than to require the people traveling their own roads to come to a full stop at the sight of two parallel bars of iron laid across the public highway, simply because the railroads, while saving themselves the expense of avoiding grade crossings, are unwilling to take the trouble or responsibility to give proper signals or to establish gates and custodians whenever needed.' That is *Judge Clark's* language on it. I don't care how much Mr. Allen objects to it. It is my opinion that the Supreme Court of North Carolina in the case of *Moseley v. R. R.*, 197 N. C., at p. 628, has backed *Judge Clark* up in his statement that it is not your duty to stretch your necks and bow to two iron rails. That is what you say the law is. The Supreme Court of North Carolina does not say that in this *Moseley case* here. I want to read this. It is the last word from the Supreme Court of North Carolina on the question: 'If the plaintiff's view is obstructed or his hearing an approaching train is prevented, and especially if this is done by the fault of the defendant (remember the defendant in this case had a little old shanty out there and that is the reason he could not see by it—especially if this is done by the fault of the defendant), the company's servants fail to warn him of its approach (what Mr. Coon said they did here), and induced by this failure of duty, which had lulled him into security, he attempted to cross the track and is injured, having used his faculties as best he could, under the circumstances (Look if you can. If you can't look, listen and you have a right to listen. His Honor will charge you that any man driving or walking across a railroad track, having used his faculties as best he could by listening and looking, has a right to expect that the railroad is going to carry out its duty, had a right to assume that the railroad will be careful in running at the proper speed, and ringing its bell)—having used his faculties as best he could, to ascertain if there is any danger ahead, negligence will not be imputed to him, but to the company, its failure to warn him being regarded as the proximate cause of any injury he received.' That case is dated 30 October, 1929, just a year ago."

This record discloses that the learned attorney for plaintiff, taking the argument as a whole, was comparing the dissenting opinion in the *Kimbrough case* and showing similarity to the *Moseley case,* which was a unanimous decision of this Court. In the controversy *the court then charged: "The jury will take the law from the court and not from counsel."* This was a clear, well understood charge by the court below to the jury. When the court came to charge the jury the law was stated so accurately that there is no question made in the main opinion that the court below did not charge the law applicable to the facts correctly.

Then, again, since the decision in the *Kimbrough case,* the Legislature of North Carolina has practically said what *Judge Clark* said: Acts 1923, ch. 255, sec. 1, N. C. Code, 1927 (Michie), C. S., 2621(b): "No person operating any motor vehicle upon a public road shall cross or attempt to cross, any railroad or interurban track intersecting the road at grade, other than a crossing at which there is a gate or a watchman (except an electric railway track in a city, town or village), without first bringing said motor vehicle to a full stop at a distance not exceeding fifty (50) feet from the nearest rail. *No failure so to stop, however, shall be considered contributory negligence per se in any action against the railroad or interurban company for injury to person or property, but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether the plaintiff was guilty of contributory negligence."*

The failure of a motorist to stop his automobile before crossing a railroad at a grade crossing on a public highway, as directed by this section, "at a distance not exceeding fifty feet from the nearest rail," does not constitute contributory negligence *per se* in his action against the railroad company to recover damages to his car caused by a collision with a train standing upon the track, and where the evidence tends only to show that the proximate cause of the plaintiff's injury was his own negligence in exceeding the speed he should have used under the circumstances, a judgment as of nonsuit thereon should be entered on defendant's motion therefor properly entered. *Weston v. R. R.,* 194 N. C., 210 (written for the Court by *Brogden, J.).*

The *Moseley,* and other cases too numerous to cite, are similar to the *Kimbrough case,* and written since the above statute was enacted. From the charge of the court below: "The jury will take the law from the court and not from counsel," a new trial granted in this case will seriously hamper the sound discretion of the court below and tend to land its discretion in quick-sand.

I think a new trial granted on the record in this case is technical in the extreme, and contrary to the well settled principles of law, time and time again reiterated by the Court, viz.: "The appellant is required to show error, and he must make it appear plainly, as the presumption is against him."

CONNOR, J., concurring.