CLINTON COTTON MILLS, Incorporated, v. ROBERT GOLDBERG and FRANK GOLDBERG, Partners, Trading as AMERICAN METAL AND WASTE COMPANY.

(Filed 6 April, 1932.)

1. **Sales D d—After refusal of shipment by purchaser the seller is not required to make further tender of performance.**

   Where the purchaser wrongfully refuses to receive shipment of goods under a written contract the seller is not bound to tender further performance if he is able, ready and willing to make delivery, and where the evidence is conflicting as to whether the refusal was wrongful, an issue of fact is raised for the determination of the jury.

2. **Sales G c—Where purchaser wrongfully refuses to accept goods seller may resell on open market to mitigate damages.**

   Where the purchaser wrongfully refuses to accept a shipment of goods under a written contract, the seller, as agent for the purchaser, may, in good faith resell the goods on the open market at a fair sale and apply the proceeds to the payment of the contract price in diminution of his loss, and recover of the purchaser the difference between the contract price and the amount obtained from the sale on the open market when the latter is less than the former.

3. **Same—Burden is on purchaser to prove that seller failed to use due diligence in resale of goods when relied on by him.**

   Where the purchaser of goods under a contract wrongfully refuses to accept them, and the seller resells the goods on the open market to diminish the damages, and the purchaser alleges that the seller failed to use due diligence to obtain a fair price for the goods in the resale: *Held*, the burden is on the purchaser to prove the seller's failure to use due diligence when relied on by him.

Civil action, before *Harding, J.,* at March Term, 1931, of Gaston. On 20 November, 1928, the plaintiff and the defendants entered into a written contract providing in substance that the plaintiff would sell and that the defendants would buy the entire production of cotton waste of plaintiff "over the year 1929 from 1 January, 1929, through 31 December, 1929." The quality of waste consisted of three grades specified in the contract as "motes, card-fly and white-dust-house." The shipments were to be made "monthly as accumulated with bill of lading attached." According to the terms of the contract, the plaintiff shipped to the defendants certain waste on 6 February, 1929, 2 April, 1929, 3 May, 1929, 31 May, 1929, 1 June, 1929, and 12 June, 1929. No objection was made by the defendants as to the quality or packing of the waste until the shipment of 12 June, 1929. On 21 June, 1929, the defendants notified the plaintiff as follows: "Regret to advise you shipment motes 12 June much lower in quality than before. We cannot use

at invoice price. Please wire disposition or indicate your idea of price adjustment." Here the controversy between the parties began. On 25 June, the plaintiff advised the defendants that the shipment of 12 June, was identically of the same quality as prior shipments, and on 27 June, the plaintiff further advised the defendants that it would not expect them to accept "the same kind of material over the balance of this year as per our contract with you." On 28 June, the defendant notified the plaintiff that by reason of the low quality of waste they would not accept the same and that the material was still in the car on siding and demurrage accruing daily. On 29 June, the plaintiff notified the defendants that the material furnished was in accordance with the contract and that it would expect the defendants to continue accepting shipments over the balance of the year. In the meantime the defendants requested the plaintiff to investigate the quality of material shipped, which the plaintiff refused, taking the position that all shipments were strictly in accordance with the contract. Thereafter, on 8 July, 1929, the defendants notified the plaintiff: "We will have to refuse any further shipments you make us unless you show a willingness to do what is right regarding the shipment of fly and motes in question." Thereafter, on 12 September, the plaintiff notified the defendants they had omitted and refused to give shipping instructions for further material and that as a result thereof that the plaintiff would sell "at the end of each month our products in the open market at the highest possible price, charging all loss to you."

The plaintiff contended and offered evidence tending to show that the output of the mill at contract price after breach by the defendants, would have amounted to $7,082.56, and that it had received therefor by sale in the open market $4,040.11, and that, therefore, it suffered damage in the sum of $3,042.45.

The defendants alleged and offered evidence tending to show that the plaintiff had breached the contract by undertaking to deliver inferior quality and by negligently packing and mixing the material, which resulted in a loss of $2,500, and they ask for recovery of said amount from the plaintiff.

The jury found that the defendants breached the contract and assessed damages in the sum of $3,042.45 with interest from 31 December, 1929. The fourth issue relating to the defendants' counterclaim was not answered.

From judgment upon the verdict in favor of plaintiff, the defendants appealed.

*H. C. Jones, Brock Barkley and E. B. Benning for plaintiff.*
*Clyde R. Hoey and S. J. Durham for defendants.*

BROGDEN, J. Evidence was offered by the plaintiff in support of its claim and tending to show full compliance with the contract on its part and breach of contract on the part of defendants. Likewise the defendants offered evidence tending to show a breach by the plaintiff, thus relieving the defendants from the duty of accepting the shipments. Therefore, in the last analysis the cause was reduced to an issue of fact.

The principles of law involved are plain and well settled. If a buyer of goods, without legal cause, refuses to accept the goods before the time for performance has expired, such refusal dispenses with the necessity for tender, if the seller is otherwise able, ready and willing to comply with the terms of the contract. *Wilson v. Cotton Mills,* 140 N. C., 52, 52 N. E., 250; *Ward v. Albertson,* 165 N. C., 218, 81 S. E., 168; *Bryant v. Lumber Co.,* 192 N. C., 607, 135 S. E., 531; *Wade v. Lutterloh,* 196 N. C., 116, 144 S. E., 694. The opinion of the Court in the *Wade case, supra,* quotes with approval the following pertinent proposition of law: "Renunciation by one party excuses the other from any further offer to perform, so that the failure of such other party to perform or to tender performance does not give to the party who was originally in default the right to treat the contract as discharged because of such nonperformance; and such failure does not show that the party who was originally not in default and who has omitted to perform further, or to tender performance, has consented to treat such contract as discharged so as to prevent him from enforcing it thereafter, at least by an action for damages or some similar appropriate remedy."

If the defendants, without legal cause, refused to accept further shipments, the plaintiff had the right to resell the material specified in the contract as agent of defendants and to recover from them the difference between the contract price and that obtained on the resale, if the resale was made within a reasonable time, fairly conducted, with full notice, and consummated in the exercise of utmost good faith. *Lamborn v. Hollingsworth,* 195 N. C., 350, 142 S. E., 19. The plaintiff offered evidence tending to show performance of this duty. However, the defendants contended that if plaintiff had exercised reasonable care and diligence in selling in the open market, the price obtained would have been equal to or in excess of that specified in the contract and consequently plaintiff would have suffered no damage. In this connection, the trial judge instructed the jury that the burden was on the defendants to show that the market value was more than the contract price.

The defendants assert that the court, by such instruction, imposed upon them a burden of proof not contemplated or permitted by law. Manifestly, it was the duty of the plaintiff to exercise reasonable diligence to diminish and minimize the loss resulting from the breach of

contract by undertaking to dispose of the waste for the best price obtainable, under all the circumstances. *Hassard-Short v. Hardison,* 114 N. C., 482, 19 S. E., 728; *Mills v. McRae,* 187 N. C., 707, 122 S. E., 762; *Construction Co. v. Wright,* 189 N. C., 456, 127 S. E., 580.

The pertinent principle of law was thus stated in the *Mills case, supra:* "It would seem to be more in accord with fairness to require the defaulting seller—the party charged with responsibility for breach of the contract—to prove that similar goods could have been readily procured in the market than to require the vendee to show that like goods could not be obtained in the market." That is to say, if the party in default asserts that the other party has failed to exercise reasonable diligence in diminishing and minimizing the loss, the burden is upon such defaulting party to establish his contention by proper evidence. Viewed in this light, the instruction complained of cannot be held for error.

No error.